

FILED

Mar 15 2017, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jeffrey R. Wright
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gary Hanks,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 15, 2017

Court of Appeals Case No.
10A01-1604-PC-690

Appeal from the Clark Circuit
Court

The Honorable Andrew Adams,
Judge

Trial Court Cause No.
10C01-1106-PC-7

**Mathias, Judge.**

[1] Gary Hanks ("Hanks") pleaded guilty in Clark Circuit Court to one count of Class A felony child molesting. Hanks collaterally attacks his plea as the product of the ineffective assistance of his trial counsel and as not knowingly, intelligently, and voluntarily made. Hanks's petition for post-conviction relief on those grounds was denied by the court below.

[2] When a defendant is deciding whether to expose himself to a sentencing judge's absolute discretion, is local defense counsel constitutionally required to advise his client of the local judge's sentencing practices in cases like his client's? Because Hanks has not persuaded us that, as applied to the facts of his case, counsel was required to do so, we affirm as to the ineffective assistance claim. We remand for judgment on the voluntariness claim because it was raised but not resolved below.

## Facts and Procedural History

[3] On July 20, 2000, Hanks was charged with one count of Class A felony child molesting and four counts of Class C felony child molesting. The State's case for guilt was strong: Hanks's grade-school-aged victim, then living with Hanks, had come forward with credible accusations and Hanks had admitted the truth of most or all of them during a noncustodial taped interview in Hanks's home with a detective of the Jeffersonville Police Department.

[4] On February 5, 2001, after withdrawal of Hanks's private counsel, the Clark Circuit Court appointed the Clark County public defender to represent Hanks. On February 13, 2001, attorney Christopher Sturgeon ("Sturgeon") of the public defender's office entered his appearance for Hanks. Sturgeon had had a long career in Clark County criminal litigation, serving as a deputy prosecutor from 1989 to 1994 and as a public defender since 1994. Hanks was then being held in the Clark County jail.

[5] On March 7, 2001, from his office about five miles away, Sturgeon sent Hanks a letter in jail about a plea offer Sturgeon had received from the State. Under the offer ("the thirty-year offer"), Hanks would plead guilty to the Class A felony charge. In return, the State would dismiss the four Class C felony charges and recommend a thirty-year sentence, then the presumptive sentence for a Class A felony. Sturgeon "assume[d]" that he and Hanks had discussed the thirty-year offer before Sturgeon's March 7, 2001, letter, Tr. p. 31, but, in any event, Hanks held out hope for a reduced sentence between the twenty-year statutory minimum and the thirty-year presumptive sentence.

[6] In his letter, Sturgeon emphasized that the prosecutor "will not reduce her previous [thirty-year] plea offer . . . ." Ex. Vol., Pet.'s Ex. G (original emphasis). Hanks "must either accept her plea offer or go to trial." *Id.* Sturgeon advised Hanks of the ninety-year maximum sentence Hanks could face if he went to trial on all five felony charges and lost. Sturgeon noted that Hanks had previously told him that Hanks "did not have any intention of going to trial." *Id.* Hanks now needed to make a final decision "whether [he] want[ed] to accept the plea agreement or go to trial." *Id.* With trial set for March 20, 2001, Sturgeon needed to know Hank's choice "immediately." *Id.* Beyond reciting the terms of the thirty-year offer and the statutory maximum sentence Hanks could face if convicted of all charges, Sturgeon provided no substantive advice as to which course to pursue and did not suggest any alternative courses.

[7] Hanks did not accept the thirty-year offer. The record does not disclose whether Hanks expressly rejected it, or whether and when the offer expired or was withdrawn. On Hanks's motion, trial was continued to June 26, 2001.

[8] On May 21, 2001, the State made a new offer ("the open offer"): Hanks would plead guilty "open," that is, without benefit of a sentencing recommendation from the State, to the Class A felony charge. If the agreement were accepted by the trial court, the trial court would retain absolute discretion to fix any sentence between the twenty-year statutory minimum and the fifty-year statutory maximum. In return, as under the thirty-year offer, the State would dismiss the four Class C felony charges.

[9] The course of negotiations leading to this offer, and Sturgeon's advice, if any, to Hanks as he considered it, do not appear clearly from the record. Hanks testified that, beyond the thirty-year offer, the "only other avenue that [Sturgeon] presented to [him] was the [open offer] or going to trial." Tr. p. 52. Hanks testified that he and Sturgeon did not discuss what the sentencing judge "might do" in sentencing Hanks on an open plea, Tr. p. 55, and that Hanks received no guidance on the likelihood of achieving his stated goal of a sentence under thirty years. Tr. p. 52. Hanks accepted the open offer, still hoping for a sentence less than thirty years. On June 11, 2001, the plea agreement was filed and accepted by the trial court.

[10] At that time, Judge Daniel F. Donahue ("Judge Donahue") was judge of the Clark Circuit Court. Judge Donahue served in that capacity from 1987 to 2008.

During that time, Judge Donahue, according to his own account, "took a hard stance in sentencing defendants in sexual offender sentencing proceedings." Ex. Vol., Pet.'s Ex. E. While Judge Donahue based his sentencing decisions on the evidence and argument presented by the parties, "it was not uncommon for maximum sentences to be imposed" by him in sex offender cases. *Id.* This "history of imposing maximum sentences in se[x] offender cases," Judge Donahue thought, "would likely" have been known to local criminal defendants and to the local defense bar. *Id.* Moreover, Judge Donahue "did not particularly care for 'blind [i.e., open] pleas,' but preferred to have the State and the defense decide an appropriate sentence . . . and present that determination to the [c]ourt for its acceptance or rejection." *Id.* Sturgeon, however, despite his long career in Clark County criminal litigation, was aware neither of Judge Donahue's sentencing practices in sex offender cases, Tr. p. 21, nor of Judge Donahue's disfavor of open pleas. Tr. p. 22.

[11] At his July 11, 2001, sentencing before Judge Donahue, Hanks pleaded for mercy. Sturgeon pointed out Hanks's contrition and immediate acceptance of responsibility but brought forward no evidence in mitigation outside what Hanks had just told the court in allocution. The State brought forward the victim's mother and tendered a case on appropriate sentencing in cases like Hanks's. The prosecutor hoped "God shows [Hanks] mercy. This [c]ourt should show him none." Ex. Vol., Pet.'s Ex. C., p. 26. Judge Donahue exercised his absolute discretion to the fullest and sentenced Hanks to the

statutory maximum fifty-year term in the Department of Correction. Hanks did not appeal his sentence.

[12] Sometime later, Hanks heard from a fellow inmate at the Department of Correction that the following colloquy with Judge Donahue had taken place at the fellow inmate's September 30, 2002, sentencing hearing on an open guilty plea to a sex offense:

| The Court: | Were you aware of the fact that in two prior cases of a similar nature in which [the fellow inmate's counsel] was defense attorney I maxed out [i.e., gave the maximum sentence to] the two individuals and they're both serving fifty years in prison. Were you aware of that? |
|---|---|
| [Fellow Inmate]: | No, sir. . . . . |
| The Court: | [The fellow inmate's counsel] represented them and they were blind pleas and I listened to it all. I read the Pre-Sentence Investigation Report. I heard what every, each side had to say. And in those cases I maxed them out . . . . So I'm going to do the same thing here. I don't know, as I sit here I cannot tell you immediately what sentence I'm going to impose, but you need to know for the record that in these kinds of cases I—[i]t ought to be known to criminal [d]efendants that I take a pretty hard stand. . . . . I want you to know that that's the history that I have. And to be fair to you, you need to know it up front before we go forward and before you enter pleas . . . . I don't particularly care for blind pleas. I'd much |

rather the State and the defense, and defense counsel decide what is appropriate based upon history. . . . I'll tell you what we'll do. We'll go off record. And I'll step down and we'll give [the fellow inmate] and [his attorney] five or ten minutes to discuss this. . . . [Y]ou need to know up front, and you, quite frankly, should have been told.

Confidential Ex. Vol., Pet.'s Ex. D1, pp. 20–21.

[13]   Hanks petitioned for post-conviction relief on June 16, 2011. The post-conviction court heard evidence and argument on Hanks's amended petition on January 22, 2016. Particularly, the court heard the testimony of Hanks, Sturgeon, and Jeffrey Stonebraker ("Stonebraker"), chief public defender for Clark County in 2001 and at the time of the hearing in this case. The post-conviction court denied the petition on March 8, 2016.

[14]   This appeal timely followed. Hanks claims that Sturgeon provided constitutionally ineffective assistance in failing to advise Hanks of Judge Donahue's sentencing practices with regard to open pleas in sex offender cases, but for which failure Hanks would not have rejected the thirty-year offer. Hanks claims further that, from his ignorance of Judge Donahue's sentencing practices, his guilty plea was not knowingly, intelligently, and voluntarily made. To remedy these alleged deficiencies, Hanks seeks reduction of his fifty-year sentence to thirty years.

# Standard of Review

A post-conviction petitioner bears the burden of showing he is entitled to relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013); Ind. Post-Conviction Rule 1(5). A petitioner appealing the denial of his petition thus appeals from a negative judgment, that is, from an adverse decision of an issue on which the petitioner bore the burden of proof. *Bethea*, 983 N.E.2d at 1138. To prevail on appeal of a negative judgment, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* We disturb that court's factual findings only where clearly erroneous, leaving us with a definite and firm conviction that a mistake has been made. *Id.* We review legal conclusions de novo. *Id.*

# Discussion and Decision

## I. Ineffective Assistance of Counsel

The Sixth Amendment to the federal constitution, applied to this state in relevant part by the Fourteenth Amendment, protects the right of an accused "[i]n all criminal prosecutions . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI; *Powell v. Alabama*, 287 U.S. 45, 68 (1932). Our state constitution protects the same right. Ind. Const. art. I, § 13 ("In all criminal prosecutions, the accused shall have the right . . . to be heard by . . .

counsel . . . .").[1] The assistance of counsel means the *effective* assistance of counsel. *Powell*, 287 U.S. at 71. Counsel himself can deprive an accused of his Sixth Amendment right by failing to render adequate legal assistance. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant who receives ineffective assistance is entitled to a remedy that will "neutralize the taint of [the] constitutional violation," *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012) (internal quotation and citation omitted), including setting aside a guilty plea where necessary. *Id.* at 1389.

[17] To prevail on a claim that he has received ineffective assistance of counsel, a defendant must satisfy a two-pronged test: first, that counsel's performance fell below an objective standard of professional reasonableness ("the performance prong"); second, that there is a reasonable probability the outcome of the proceeding would have been different but for counsel's unprofessional errors ("the prejudice prong"). *Strickland*, 466 U.S. at 687; *Bethea*, 983 N.E.2d at 1138–39. Failure to satisfy either prong causes the whole claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). This analysis applies equally to plea negotiations as to trial performance, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Segura v. State*, 749 N.E.2d 296 (Ind. 2001), as plea negotiation is one of the "critical phase[s] of litigation" to which the Sixth Amendment right attaches. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).

---

[1] Hanks raises no separate argument from this provision of our constitution.

[18] The alleged deficiency in Sturgeon's performance is his failure to advise Hanks of Judge Donahue's sentencing practices in sex offender cases. The post-conviction court expressly found that Sturgeon "did not know" of those practices. Appellant's App. p. 156. Hanks does not ask us to revisit that finding; indeed, he argues that the standard of review prohibits us from doing so. Appellant's Br. p. 17. Rather, Hanks claims, Sturgeon's "lack of knowledge, alone" was deficient performance. *Id.*

[19] This was the same claim the post-conviction court rejected as a matter of law. Appellant's App. p. 157 (post-conviction court's memorandum decision, ruling that, in the absence of evidence that "[Sturgeon] had any knowledge of what the judge would do or that [Sturgeon] mislead his client, [Sturgeon's] failure to know, alone, does not meet the standard for ineffective assistance . . . ."). We owe no deference to the post-conviction court's legal conclusion that Sturgeon's failure to know, alone, cannot rise to the level of constitutionally deficient performance.

[20] "Even under de novo review," however, "the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal quotation and italics omitted). "[C]ounsel's performance is presumed effective," a presumption overcome only by "strong and convincing evidence" of ineffectiveness. *Overstreet v. State*, 877 N.E.2d 144, 152 (Ind. 2007). Accordingly, we presume that all significant decisions were made in the exercise of counsel's reasonable professional judgment. *Timberlake v. State*, 753

N.E.2d 591, 603 (Ind. 2001). In particular, counsel enjoys broad discretion in making tactical and strategic decisions, and we defer to such decisions. *Id.*

[21] "[H]ow to define the duty and responsibilities of defense counsel in the plea bargain process" is a "difficult question." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). The interaction of *Strickland* with the Supreme Court's more recent decisions in *Padilla*, *Lafler*, and *Frye* has created "a new field not only of plea-bargaining law, [as charged by the *Lafler* dissenters, 132 S. Ct. at 1391 (Scalia, J., dissenting),] but also of pretrial advice law." Richard E. Myers II, *The Future of Effective Assistance of Counsel: Rereading* Cronic *and* Strickland *in Light of* Padilla*,* Frye*, and* Lafler, 25 Tex. Tech. L. Rev. 229, 234 (2013). The boundaries of this new field are still undefined. Neither Hanks nor the State have provided us with adequate guidance for resolving this question of first impression: When a defendant is deciding whether to expose himself to a local sentencing judge's absolute discretion, is local defense counsel constitutionally required to advise his client of the local judge's sentencing practices in cases like his client's?

[22] First, the distinctions between failure to know, failure to advise, and affirmatively bad advice are not dispositive to the legal analysis of Hanks's claim. To the extent that the post-conviction court's decision relied on those distinctions, the court erred.

[23] The Supreme Court considered the operation of the distinction between failure to advise and bad advice in *Padilla*. There, a long-time lawful permanent

resident of the United States pleaded guilty to several drug offenses. Counsel did not tell Padilla that his guilty plea "made his deportation virtually mandatory," 559 U.S. at 359, and affirmatively advised him not "to worry about immigration status." *Id.*

[24] The Court squarely held "that counsel *must inform* her client whether his plea carries a risk of deportation." *Id.* at 374 (emphasis added). This holding expressly rejects the distinction between failure to advise and bad advice. *See also id.* at 369-70 (considering whether to limit *Strickland* to cases of bad advice, where its application is well settled, and deciding not to so limit it), 388 (Alito, J., concurring in the judgment) ("[S]ilence alone is not enough to satisfy counsel's duty to assist the client."); *Black v. State*, 54 N.E.3d 414, 427 (Ind. Ct. App. 2016) (reading *Padilla* to hold that "there is no relevant difference between an act of commission and an act of omission"), *trans. denied*. This holding also impliedly rejects the distinction between failure to advise of what is known and failure to know, alone.

[25] Similarly, in *Frye*, a case close to the facts before us, defense counsel failed to inform the defendant of a favorable plea offer from the prosecution. The offer lapsed. Frye later pleaded guilty open, as Hanks did, and received a harsher sentence than he would have under the lapsed offer. There as here, "the guilty plea that was accepted, and the plea proceedings concerning it in court, were all based on accurate advice and information from counsel." *Frye*, 132 S. Ct. at 1406. There as here, "[t]he challenge is not to the advice pertaining to the plea that was accepted [viz., in Hanks's case, the choice between the open offer and

trial] but rather to the course of legal representation that preceded it with respect to other potential pleas and plea offers [viz., in Hanks's case, the choice between the thirty-year offer, trial, or seeking a more favorable offer]." *Id.*

[26] The Court held that, "as a general rule, defense counsel has *the duty to communicate* formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id.* at 1408 (emphasis added). Nothing here suggests that counsel's duty to communicate would have evaporated if Missouri had shown that Frye's counsel did not actually know of the plea offer (for example, if counsel never opened the prosecutor's letter communicating the offer), so long as it could fairly be said that counsel *should* have known of the offer.

[27] If failure to advise may be constitutionally deficient on the same terms as bad advice, the cause of a failure to advise, whether because of overwork,[2] procrastination, or ignorance, is immaterial. The right at issue is the right "*the accused* shall enjoy," U.S. Const. amend. VI (emphasis added), to receive the effective assistance of counsel. It is either the right of an accused to be advised of a particular fact, or it is not. If information about a local judge's sentencing practices is a necessary component of receiving effective assistance from local

---

[2] In *Frye*, "Galin Frye's lawyer did not make a strategic choice to decline to relay the prosecutor's offer because he thought it was unreasonable or that Frye had a case worth taking to trial. Rather, he was struggling with a crushing caseload that so preoccupied him that he did not even find the time to communicate a favorable plea offer to Frye." Peter A. Joy & Rodney J. Uphoff, *Systemic Barriers to Effective Assistance of Counsel in Plea Bargaining*, 99 Iowa L. Rev. 2103, 2112 (2014).

counsel in a particular case, the accused's lack of such information satisfies the performance prong without regard for *why* counsel failed to supply it. Put another way, the content of the Sixth Amendment right is defined by an *objective* standard of professional reasonableness, not by individual counsel's *subjective* knowledge, skill, or diligence.

[28] Next, with no barrier as a matter of law to Hanks's claim, it remained Hanks's burden to show that, on the facts of his case, Sturgeon's failure to advise him of Judge Donahue's sentencing practices fell below an objective standard of professional reasonableness. This Hanks has not done.

[29] In its standards for criminal practitioners, the American Bar Association ("ABA") states, with respect to sentencing, "Defense counsel's preparation should . . . include familiarization with the court's practices in exercising sentencing discretion . . . and [with] the normal pattern of sentences for the offense involved . . . ." Criminal Justice Standards: Prosecution Function and Defense Function Standard 4-8.1 (Am. Bar Ass'n 1993). The comment to Standard 4-8.1 explains further that "[c]ounsel must . . . become familiar with the judge's actual sentencing practices. . . . The lawyer should carefully explain to the defendant the sentencing alternatives available to the court and what they will mean for the defendant personally . . . ." *Id.* at cmt. We note that the language of the governing standard itself is hortatory ("should"); only the language of the comment is mandatory ("must"). Neither the ABA's Model Rules of Professional Conduct nor Indiana's Rules of Professional Conduct speak directly to this issue.

[30] Whether, as a general rule, performance is measured by a national or local standard is not settled. *See Strickland*, 466 U.S. at 689 ("Prevailing norms of practice as reflected in [ABA] standards and the like . . . are guides to determining what is reasonable . . . ."). *Compare Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (The ABA standards state counsel's obligation to investigate "in terms no one could misunderstand . . . ."), *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) ("Counsel's conduct . . . fell short of the standards for capital defense work articulated by the [ABA] . . . ."), *Williams v. Taylor*, 529 U.S. 362, 396 (2000) (finding deficient performance in capital sentencing where "trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background" as required by ABA standards), *with Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (denying relief and faulting dissenters for failing to cite evidence that counsel's conduct "would have been inconsistent with the standard of professional competence in capital cases that prevailed in Los Angeles in 1984"), *Wiggins*, 539 U.S. at 524 ("Counsel's decision . . . fell short of the professional standards that prevailed in Maryland in 1989.").

[31] The strongest claims for deficient performance, of course, present failures of multiple standards. *See Frye*, 132 S. Ct. at 1408 (granting relief relying on ABA standards, holdings of five state high courts and seven federal circuits, and six state codes of professional conduct), *Wiggins*, 539 at 524–25 (relying on both national and local standards). The Supreme Court has emphasized that national standards like the ABA's are "guides to determining what is reasonable, but they are only guides." *Strickland*, 466 U.S. at 688.

[32]   In the case of familiarity with local judges' sentencing practices, a national standard, standing alone, seems particularly inadequate to determining the lower bounds of reasonably effective performance. We acknowledge that the federal constitution must mean the same thing in Clark County as in Marion County, *see* Tr. p. 65 (prosecutor expressing doubt about how Hanks's argument could apply to large counties like Marion), and the same thing in Indiana as in Illinois. *Martin v. Hunter's Lessee*, 14 U.S. 304, 348 (1816) (Story, J.) ("If . . . the constitution of the United States [c]ould be different in different states, . . . [t]he public mischiefs that would attend such a state of things would be truly deplorable . . . ."). Further, we acknowledge that use of a local standard may validate as "tactical" the individual decisions imposed on counsel by a structurally deficient system of representation, whether due to systemic prejudice, systemic lack of resources, or other systemic defect. *See Tollett v. Henderson*, 411 U.S. 258, 269 (1973) ("[T]he chances of respondent's being able to [prove an incompetently counseled guilty plea on remand] would appear slim" in view of the lower courts' reliance on "the statement of the concurring judge in the Tennessee Court of Criminal Appeals that '[n]o lawyer in this State would have ever thought of objecting to the fact that Negroes did not serve on the Grand Jury in Tennessee in 1948 . . . .'").

[33]   Nevertheless, in the case of local counsel's familiarity with a local judge's sentencing practices in a class of cases, while the ABA standards impose a general, national obligation on defense counsel to attain such familiarity, the particular content of this obligation is susceptible to local variation in a way

that other professional standards, for example, the duty to adequately investigate or the duty to communicate plea offers, are not. What level of familiarity with local judges in a class of cases is professionally reasonable, and how quickly it is professionally reasonable to attain that level of familiarity, will obviously be very different in Clark County, Indiana, than in Cook County, Illinois, with a population nearly fifty times as great.[3]

[34] When a claim of ineffective assistance is predicated on failure to advise of or act on local, extralegal idiosyncrasies, as Hanks's is, a showing of deficient performance requires strong evidence that the local, extralegal idiosyncrasy rose to the level of governing professional norm. *See Premo v. Moore*, 562 U.S. at 122 ("The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." (internal quotation and citation omitted)).

[35] Crucially, there is no evidence in the record that reasonable professional competence in Clark County in 2001 required knowledge of Judge Donahue's sentencing practices in sex offender cases. The only evidence in the record is that Sturgeon did not know of these practices; that Stonebraker, the chief public defender for Clark County, and his office did not formally or informally instruct

---

[3] Clark County, population 110,232; Cook County, population 5,194,675. U.S. Census Bureau, *2010 Census Interactive Population Search*, http://www.census.gov/2010census/popmap/ipmtext.php?fl=18019:17031 (last updated May 26, 2011).

its attorneys on these or other judges' practices; and that Judge Donahue speculated local attorneys "would likely" know of his practices. Ex. Vol., Pet.'s Ex. E.

[36] Neither Judge Donahue nor a single local attorney claimed that any local attorney actually did know of Judge Donahue's practices. There is no evidence of the frequency with which sex offender cases were brought before Judge Donahue, still less of how many such cases were brought before the judge on open pleas, such that the judge's "hard stance" in those cases, *id.*, could or should have been inferred by local counsel. No evidence tended to show Judge Donahue actually had his self-ascribed reputation. To the contrary, Stonebraker testified that, in general, Judge Donahue "did not have a reputation for giving the maximum sentence in every case," that Judge Donahue was thought to "evaluat[e] each case on its merits," and that Judge Donahue did not have a reputation as a "hanging judge, so to speak." Tr. p. 45. Judge Donahue's speculation that he "would likely" have had such a reputation in sex offender cases is far from showing that local attorneys as a matter of professional competence should have known of his sentencing practices in such cases. Ex. Vol., Pet.'s Ex. E.

[37] Below, Hanks argued that "an attorney has to more than just say, you know, here's the offer, here's the sentence . . . , what do you want to do. An attorney has to give his client a little more guidance than that." Tr. p. 69; *see Boria v. Keane*, 99 F.3d 492, 495 (2d Cir. 1996) (finding counsel's agnosticism as to a plea offer to be constitutionally deficient because the ABA "standard on the

precise question before us is . . . [that a] 'defense lawyer in a criminal case has the duty to advise his client on whether a particular plea to a charge appears to be desirable.'" (internal citation omitted)).

[38] It is true that Sturgeon's March 7, 2001, letter to Hanks offered no evaluation of or substantive advice regarding the wisdom of accepting the thirty-year offer. Sturgeon testified that such letters were his "standard practice" when a client did not want to accept a pending plea offer, drafted "the same day or within days," Tr. p. 20, leaving little time for meaningful investigation or evaluation. Sturgeon implied that anything more would remove the decision from his clients' hands. *See* Tr. p. 31. Sturgeon further testified that another "standard practice" was "always to take about *fifteen minutes* and go through . . . plea agreements with [his] clients, paragraph by paragraph." Tr. p. 32 (emphasis added). Hanks testified that he and Sturgeon did not discuss what the sentencing judge "might do" in sentencing Hanks on an open plea, Tr. p. 55, and that Hanks received no guidance on the likelihood of achieving his stated goal of a sentence under thirty years. Tr. p. 52. Though Sturgeon could not recall any specifics of Hanks's case, this testimony suggests that Hanks decided to throw himself at the mercy of Judge Donahue, exposing himself to fifty years' incarceration, on the strength of one letter reciting the applicable

statutory maximum and minimum sentences, one fifteen-minute read-through of the terms of the plea agreement, and nothing else. [4]

[39] Hanks has not, however, renewed broad arguments from these facts on appeal, and they do not go to his narrow claim for failure to advise of Judge Donahue's sentencing practices.

[40] For all of these reasons, we conclude that Hanks has not carried his burden to show that the facts of this case lead unerringly and unmistakably to the conclusion that Sturgeon, by his failure to advise Hanks of Judge Donahue's sentencing practices in sex offender cases, fell short of the standard of reasonable competence demanded of Clark County defense counsel in 2001. We must decline Hanks's invitation to constitutionalize Judge Donahue's opinion about what a different criminal defendant, "quite frankly, should have been told." Confidential Ex. Vol., Pet.'s Ex. D1, p. 21.

---

[4] Moreover, in a case where Hanks's guilt was nearly a foregone conclusion, and nearly all the benefit Hanks could get from counsel would be had either in plea bargaining or at sentencing, Sturgeon presented effectively no case in mitigation. Hanks pleaded for mercy in allocution; Sturgeon pointed out that Hanks had just accepted responsibility and was contrite. However, Sturgeon did emphasize that "nobody . . . can undo what has been done to [Hanks's victim]," Ex. Vol., Pet.'s Ex. B, p. 18, that Hanks was "willing to accept whatever punishment the [c]ourt deems necessary," *id.* at p. 19, that "whatever the [c]ourt does to [Hanks] is nothing compared to what he has done to [his victim]," *id.*, that "it's between Mr. Hanks and God," *id.*, and that Sturgeon was not "going to sit here and try to recommend anything specific to the [c]ourt," *id.* at p. 20, despite his client's repeatedly expressed desire for a sentence less than the presumptive. Tr. pp. 51–52. Sturgeon's parsimony and *sua maxima culpa* could not, of course, have been a tactical preference in the face of Judge Donahue's "hard stance" in sex offender cases, Ex. Vol., Pet.'s Ex. E, because Sturgeon did not know of that stance.

[41] Because Hanks failed to show deficient performance, his entire ineffective assistance claim fails, and we need not reach the question of prejudice. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

## II. Knowing, Intelligent, and Voluntary Plea

[42] Hanks claims further that his plea, from ignorance of Judge Donahue's sentencing practices, was not knowing, intelligent, and voluntary. Hanks properly raised this claim in the post-conviction court, supporting it with evidence and argument. Appellant's App. pp. 55-57 (memorandum of law in support of amended petition), 148-49 (proposed findings of fact and conclusions of law). Hanks renews these arguments on appeal. Appellant's Br. pp. 19-22.

[43] That claim, however, was never resolved by the court below. *See* Appellant's App. pp. 152-157 (trial court's memorandum order denying relief, never discussing or deciding the voluntariness issue). Post-conviction courts are required "to make specific findings of fact, and conclusions of law on all issues presented" by a petition for post-conviction relief. P-C.R. 1(6). The State has not addressed the voluntariness claim with separate argument on appeal. *See* Appellee's Br. pp. 14-15 (treating ineffective assistance and voluntariness claims as indistinguishable).

[44] "[V]oluntariness [of pleas] is distinct from ineffective assistance of counsel." *Cornelious v. State*, 846 N.E.2d 354, 358 (Ind. Ct. App. 2006) (citing *State v. Moore*, 678 N.E.2d 1258, 1266 (Ind. 1997)), *trans. denied*. The two claims are reviewed under different standards. *Id.* "Voluntariness in Indiana practice

focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice." *Id.* (internal quotation and citation omitted). "[D]efendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief." *Moore*, 678 N.E.2d at 1266. Further, a plea may be involuntary because improperly induced by unfulfillable promises. *Lineberry v. State*, 747 N.E.2d 1151 (Ind. Ct. App. 2001).

[45] Hanks is entitled to be heard and receive the post-conviction court's ruling on this issue. We remand for a determination of whether Hanks was misled by Sturgeon's omission or improperly induced to accept the open offer on the incorrect understanding that the open offer was more favorable than the thirty-year offer.

# Conclusion

[46] For all of these reasons, we affirm the post-conviction court's denial of Hanks's ineffective assistance claim. We remand for judgment on whether Hanks's plea was knowing, intelligent, and voluntary in light of the applicable standard.

[47] Affirmed in part and remanded.

Robb, J., and Brown, J., concur.