## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 08 2019, 5:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Oscar Iraheta-Rosales, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 8, 2019 <br><br> Court of Appeals Case No. 19A-PC-327 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Mark D. Stoner, Judge <br><br> The Honorable Jeffrey L. Marchal, Judge Pro Tempore <br><br> Trial Court Cause No. 49G06-0807-PC-165849 |

**Altice, Judge.**

# Case Summary

Oscar Iraheta-Rosales pled guilty, without a plea agreement, to two counts of Class A felony child molesting and one count of Class C felony child molesting. He filed a direct appeal asserting that his sentence was inappropriate, and this court affirmed by memorandum decision. Following the denial of his petition for post-conviction relief, Iraheta-Rosales appeals and raises three issues that we consolidate and restate as:

> I. Did Iraheta-Rosales receive ineffective assistance of trial counsel?
>
> II. Was the judge who presided at the post-conviction evidentiary hearing validly appointed by the presiding judge?

We affirm.

# Facts & Procedural History

The facts of Iraheta-Rosales's offense as summarized on direct appeal are as follows:

> On or about July 7, 2008, Iraheta-Rosales took several children fishing at Eagle Creek Park in Indianapolis. At some point during the outing, Iraheta-Rosales led then-eleven-year-old I.A. away from the group. He then proceeded to fondle I.A.'s penis before telling I.A. to undress. Once I.A. had undressed, Iraheta-Rosales inserted his finger and then his penis into I.A.'s anus.
>
> Upon questioning, Iraheta-Rosales claimed that I.A. had fondled him. He also admitted to inserting his finger into I.A.'s anus.

*Iraheta-Rosales v. State*, No. 49A02-0905-CR-405, at *1 (Ind. Ct. App. Jan. 29, 2010). On July 16, 2008, the State charged Iraheta-Rosales in this case with two counts of Class A felony child molesting and one count of Class C felony child molesting under Cause Number 49G06-0807-FA-165849 (Cause 849). In September 2008, the State charged Iraheta-Rosales with two counts of Class A felony child molesting and three counts of Class C felony child molesting under Cause Number 49G06-0809-FA-206229 (Cause 229) relative to his conduct with another child, H.I. Iraheta-Rosales hired a private attorney, Jesse Coleman, to represent him in both Cause 849 and Cause 229.

[4]     In Cause 849, Coleman failed to appear for an October 24, 2008 hearing. He was late to appear at an October 29, 2008 child hearsay hearing, and it was rescheduled to November 12. Coleman then failed to appear for a January 20, 2009 pretrial conference. Neither Coleman nor Iraheta-Rosales, who was in jail, appeared for jury trial on February 23, 2009, and the matter was continued due to a congested court calendar and reset for March 23, 2009. Coleman appeared for a final pretrial conference on March 17 at which the jury trial was confirmed for March 23 at 8:45 a.m. Iraheta-Rosales appeared in person on March 23 for trial, as did the State, witnesses, forty jury pool members, and two interpreters.[1] The record reflects that Coleman was not present at 9:02 a.m. and still was not present at 9:13 a.m., causing the trial court to issue an arrest

---

[1] The record indicates that both Cause 849 and Cause 229 were set for trial on March 23, 2009, with Cause 849 to be tried first.

warrant for him. The record reflects that Iraheta-Rosales was dressed in jail attire and did not have any clothes for trial. The trial court recessed and, upon resuming on the record, Coleman was present.[2] Coleman did not have an interpreter with him to converse with his client but the court allowed Coleman to use one of the court's certified interpreters, and Coleman did not bring clothes for Iraheta-Rosales to wear for trial.

[5] Coleman confirmed that the defense was "ready to proceed" and stated that Iraheta-Rosales wanted to withdraw his not guilty plea and enter a plea of guilty on all charges without a plea agreement. *Prior Transcript* at 77-73. Because there was some discussion as to whether Iraheta-Rosales intended to plead guilty to pending charges in both Cause 849 and Cause 229, Coleman conferred off-record with Iraheta-Rosales.

[6] When the cause resumed, Coleman asked the court to continue Cause 229, but Iraheta-Rosales then stated, "I want the two cases to be done together" and "I want to go ahead with both cases." *Id*. at 77. Thereafter, Coleman told the court, "He withdraws his previously entered plea of not guilty to both cases, and enters a plea of guilty to both cases." *Id*. at 78. Iraheta-Rosales was asked and confirmed that he "wish[ed] to do that without the benefit of a plea agreement." *Id*. The trial court asked the State about any plea offer that had been made and the prosecutor advised that a plea offer had been made that

---

[2] The transcript of a contempt hearing reflects that Coleman arrived "shortly after 9:15." *Prior Transcript* at 109.

morning under which Iraheta-Rosales would plead guilty to one count of Class A felony child molesting in Cause 849 and another count of Class A felony child molesting in Cause 229, with a thirty-year executed sentence in Cause 849 and a consecutive sentence of not more than thirty years in Cause 229.[3] Iraheta-Rosales told the trial court that he did not want to accept the State's offer. The trial court explained to Iraheta-Rosales that, by rejecting the State's offer, he was exposing himself to a longer sentence, but Iraheta-Rosales confirmed he wished to proceed without the benefit of a plea agreement.

[7] The court engaged in extensive guilty plea questioning with Iraheta-Rosales, including asking him "Are you pleading guilty in any way because you believe your attorney is not ready for trial today?" and Iraheta-Rosales replied, "No." *Id*. at 86. The court told Iraheta-Rosales that it wanted "to make sure that you understand the sentencing ranges that you are facing here" and told him that, under Cause 849, he was facing a maximum one-hundred and eight years, and under Cause 229, he was facing up to one-hundred and twenty-four years. *Id*. at 85. Iraheta-Rosales confirmed repeatedly that he wished to proceed without a plea agreement. The court also explained to Iraheta-Rosales that, although he was a citizen of El Salvador, he would most likely need to serve his sentence first before he would be deported, and the court asked, "In other words, you're not pleading guilty in the belief that we'll simply send you back to your own

---

[3] The record also reflects that, according to Coleman, he had spent several hours with Iraheta-Rosales at the jail several days prior, negotiating and discussing a different plea agreement, which ultimately Iraheta-Rosales did not accept. *Prior Transcript* at 112.

country, are you?" and Iraheta-Rosales confirmed that he was not pleading guilty for that reason. *Id*. at 93.

[8] The trial court read the charging information of Cause 849, and Iraheta-Rosales stated his intention to plead guilty to those charges. The trial court then did likewise for Cause 229 and at the conclusion asked Iraheta-Rosales if he was pleading guilty to those charges, and Iraheta-Rosales replied, "No." *Id* at 99. The trial court, confused by this response, gave Coleman time to confer with Iraheta-Rosales off the record, and when the matter resumed, Coleman stated, "[H]e's not pleading guilty to 229." *Id*. at 101. After receiving additional unclear answers from Iraheta-Rosales about which charges he was pleading guilty to, the trial court asked Iraheta-Rosales, "Are you satisfied with the services of your attorney, Mr. Coleman?", and Iraheta-Rosales stated that he was. *Id*. at 102. The court also asked, "Is there anything you think your lawyer should have done for you that he didn't do?" and Iraheta-Rosales replied, "No, Your Honor." *Id*. After the State read a factual basis involving the acts occurring with the child victim, I.A. (Cause 849), Iraheta-Rosales confirmed that the facts as read were the truth and that he desired to plead guilty. The trial court accepted his plea of guilty and ordered a presentence investigation report in Cause 849, and the court continued Cause 229 at Iraheta-Rosales's request.

[9] At the April 9, 2009 sentencing hearing in Cause 849, the trial court noted that Iraheta-Rosales had entered the country illegally from El Salvador, and his work permits had expired. The trial court found as mitigating that he had no

prior criminal history and had been molested as a child and found as aggravating that he had violated a position of trust. The court imposed a sentence of forty years, with ten years suspended, on Count I, the same sentence on Count II, and five years on Count III, with the sentences to run concurrently, for an aggregate executed sentence of thirty years. Coleman withdrew as counsel at the conclusion of the guilty plea hearing, and the trial court appointed a public defender for purposes of appeal.[4]

[10] On March 7, 2018, Iraheta-Rosales by counsel filed a petition for post-conviction relief, alleging that in Cause 849: (1) his trial counsel, Coleman, provided ineffective assistance of counsel and violated the Sixth Amendment to the United States Constitution; and (2) Coleman's representation violated Indiana's right to effective representation under Article 1, Section 13 of the Indiana Constitution and Indiana Due Course of Law provision, Article 1, Section 12. Iraheta-Rosales alleged:

> Trial Counsel made numerous unprofessional mistakes. Upon information and belief, those mistakes include, but are not limited to: (1) Trial Counsel failed to explain the charges to his Client; (2) Trial Counsel failed to research the case and prepare a strategy for defending the case; (3) Trial Counsel failed to subpoena witnesses for the Jury Trial; (4) Trial Counsel failed to

---

[4] In April 2010, Cause 229 proceeded to bench trial, where Iraheta-Rosales was represented by a public defender. The trial court found Iraheta-Rosales guilty of two counts of Class A felony child molesting and of one count of Class C felony child molesting, and the court found him not guilty of the two remaining counts. The court sentenced him to twenty-five years for each Class A felony and three years for the Class C felony, ordering the sentences to run concurrently. Iraheta-Rosales filed a direct appeal, challenging admission of evidence at trial, and this court affirmed his convictions in an unpublished decision. *Iraheta-Rosales v. State*, No. 49A05-1005-CR-302 (Ind. Ct. App. Dec. 14, 2010).

appear for multiple court proceedings; (5) Trial Counsel failed to secure clothing for his client to wear at trial; and (6) Trial Counsel failed to appear at the appointed time for the Client's Jury Trial, leaving the Client high and dry with no explanation and no jury clothes, which resulted in the Court issuing a warrant for Trial Counsel's arrest; and (7) Trial Counsel failed to negotiate a plea agreement for his Client.

*Appellant's Appendix Vol. 2* at 16-17. Iraheta-Rosales argued in his petition that "this is a clear case of deficient performance," asserting that counsel's various failures to appear for hearings were not isolated mistakes but rather "exhibited a pattern of chronic neglect that detrimentally affected" Iraheta-Rosales's case. *Id.* at 17. The State did not file an answer to the petition.

[11] On September 20, 2018, an evidentiary hearing was held before Magistrate Jeffrey Marchal, sitting as judge pro tempore. Iraheta-Rosales appeared in person and with counsel, and the State appeared. The Record of Proceedings from Iraheta-Rosales's direct appeal was admitted as an exhibit, and, at the request of the State and over Iraheta-Rosales's relevancy objection, the court took judicial notice of Cause 229. The post-conviction court also took judicial notice of the trial court's file of Cause 849 and of the fact that trial counsel Coleman died on December 18, 2017. Iraheta-Rosales testified that (1) he and his family hired Coleman and paid him $6000, (2) Coleman did not explain the pending criminal charges to him, did not explain the law, such as case law or statutes, did not subpoena any witnesses on his behalf, and did not discuss having proper clothes for jury trial. When asked if there were times that he came to court and his attorney, Coleman, did not, he replied, "Yes. Many

times." *PCR Transcript* at 7. Iraheta-Rosales testified that he had never been arrested before and was not familiar with the legal system. When asked on cross-examination about the charges he faced in Cause 849 – which was asked in response to his claim that Coleman did not explain the charges to him – Iraheta-Rosales replied "Child Molestation" and acknowledged that "the judge did explain what my charges were when I was here" in court. *Id*. at 10.

[12] On January 10, 2019, the post-conviction court issued findings of fact and conclusions of law denying Iraheta-Rosales relief, including the following:

> 42. The Petitioner's testimony was not credible and was not persuasive as to any issue raised in this cause.
>
> 43. The Petitioner presented no evidence to suggest that he had a viable defense to the crimes charged.
>
> 44. The Petitioner did not establish that his attorney's tardiness and prior failure to appear for certain hearings affected his decision to plead guilty.
>
> 45. As found by the trial court, the Petitioner knowingly and voluntarily chose to waive his right to trial and plead guilty to all three charges without benefit of a plea agreement.
>
> 46. The record contradicts the Petitioner's assertion that but for Coleman's tardiness, he would not have plead guilty and would have insisted on proceeding to trial.
>
> 47. There is not a reasonable probability that the result would have been different if the Petitioner had gone to trial.

48. The evidence does not support a finding that the Petitioner was prejudiced by Coleman's late arrival for trial or for his failure to appear at prior proceedings.

* * *

57. Although the record supports a determination that Coleman failed to appear or was tardy for several hearings, including the jury trial, this does not lead to the conclusion that if counsel had been more attentive and punctual, the outcome of the case would have been different.

58. The record establishes that on the morning of trial Coleman consulted with his client for up to fifty minutes before the trial court was advised that both the prior and new plea offers were rejected and that the Petitioner wished to plead open to all charges.

59. The record further establishes that the Petitioner entered into his guilty plea voluntarily and there was a factual basis sufficient to support the charges.

60. Moreover, there is no evidence that the Petitioner was in any manner prejudiced by Coleman's late arrival for trial or his failure to appear at prior hearings. As the Petitioner made an insufficient showing of prejudice, he has likewise failed to show that he received ineffective assistance of counsel. *Segura* [*v. State*, 749 N.E.2d 496, 499 (Ind. 2001)]. The Petitioner is not entitled to relief on his claim.

*Appellant's Appendix Vol. 2* at 96, 98. The findings and conclusions were signed by Judge Pro Tempore Marchal.

[13] On February 18, counsel for Iraheta-Rosales telephoned the post-conviction court and requested a copy of the order appointing Judge Marchal as judge pro tempore for the September 20, 2018 evidentiary hearing. The following day, the court emailed the requested order, in which the Honorable Mark Stoner, on September 20, designated and appointed Jeffrey Marchal as judge pro tempore for the date of September 20, 2018. On March 26, 2019, Iraheta-Rosales filed a Verified Motion to Correct Clerk's Portion of Record, asserting, as is relevant here, that the parties were not notified on or before the date of the post-conviction hearing that Judge Marchal would be sitting as judge pro tem that date, that he typically presides over post-conviction matters in his capacity as magistrate, and that had Iraheta-Rosales been informed of the pro tem appointment, he would have objected and requested a continuance, arguing that he "should have been informed of the appointment[.]" *Id.* at 102. Iraheta-Rosales now appeals.

## Discussion & Decision

## I. Ineffective Assistance of Counsel

[14] A defendant who files a petition for post-conviction relief has the burden of establishing the grounds for relief by a preponderance of the evidence. *Zagal v. State,* 130 N.E.3d 601, 603 (Ind. Ct. App. 2019). By appealing a negative judgment, a petitioner faces a rigorous standard of review. *Wesley v. State*, 788 N.E.2d 1247, 1250 (Ind. 2003). The denial of post-conviction relief will be affirmed unless, "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id.*

Iraheta-Rosales alleges that Coleman provided ineffective performance in violation of the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution.[5] We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Armstrong v. State*, 932 N.E.2d 1263, 1268 (Ind. Ct. App. 2010). The defendant must prove that (1) counsel rendered deficient performance, meaning counsel's representation fell below an objective standard of reasonableness as gauged by prevailing professional norms and (2) counsel's deficient performance prejudiced the defendant, i.e., but for counsel's errors, the result of the proceeding would have been different. *Bobadilla v. State*, 117 N.E.3d 1272, 1280 (Ind. 2019). Failure to satisfy either prong causes the whole claim to fail. *Hanks v. State*, 71 N.E.3d 1178, 1183 (Ind. Ct. App. 2017), *trans. denied*. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Armstrong*, 932 N.E.2d at 1268.

This analysis applies equally to plea negotiations as to trial performance. *Hanks*, 71 N.E.3d at 1183. "A defendant shows prejudice from mis-advice during the guilty-plea stage by showing a reasonable probability that he would have rejected the guilty plea and insisted on going to trial instead." *Bobadilla*,

---

[5] As explained by our court in *Hanks v. State*, 71 N.E.3d 1178, 1183 (Ind. Ct. App. 2017), *trans. denied*, while the Sixth Amendment to the United States Constitution protects the right of an accused in a criminal prosecution to have the assistance of counsel for his or her defense, "[o]ur state constitution protects the same right." 71 N.E.3d at 1183 (citing Ind. Const. Art 1, Section 13). And "[t]he assistance of counsel means the effective assistance of counsel." *Id.* (citing *Powell v. Alabama*, 287 U.S. 45, 71 (1932)).

117 N.E.2d at 1284. Furthermore, "[d]efendants cannot simply say that they would have gone to trial, they must establish rational reasons supporting why they would have made that decision." *Id*. There is a strong presumption that counsel rendered adequate assistance and used reasonable professional judgment. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001).

[17] Here, Iraheta-Rosales argues that the post-conviction court erred when it determined that his trial counsel was not ineffective, asserting that Coleman's performance was "both unprofessional and deficient," which included but was not limited to, failing to appear for at least two court proceedings and arriving late for others, including the March 23 jury trial. *Appellant's Brief* at 12. Iraheta-Rosales urges that Coleman's representation did not consist of merely isolated mistakes, but rather "exhibited a pattern of chronic neglect" and that his "deficiencies were inexcusable[.]" *Id*. at 13, 18. We acknowledge that certain aspects of Coleman's representation are troubling, but assuming without deciding that his performance was deficient, as Iraheta-Rosales claims, we find that he has failed to show prejudice.

[18] Other than making general assertions that Coleman's "pattern" of deficient representation "detrimentally affected" his case, or urging that "the logical conclusion is Iraheta-Rosales would have gone to trial but for this counsel's deficient performance," Iraheta-Rosales does not explain how his counsel's performance resulted in prejudice to the outcome of his case. *Id*. at 13, 20. While Iraheta-Rosales testified at the post-conviction hearing, he never said – directly or indirectly – that but for counsel's inadequate representation, he

would not have pled guilty and would have proceeded to trial. And, according to our Supreme Court's directive in *Bobadilla*, even if he had so stated, that alone would not have been enough, as Iraheta-Rosales needed also to show sufficient special circumstances to prove that, had he been properly advised or represented, he would have gone to trial. *Bobadilla*, 117 N.E.3d at 1285 (to establish prejudice in guilty plea context, defendants "must produce evidence supporting [] claims" that they would have gone to trial).[6] No such special circumstances were argued, or appear present, in this case.

[19] To the extent that Iraheta-Rosales's claim is that, due to Coleman's failure to timely appear for trial and inadequate representation during plea negotiations, Iraheta-Rosales had to "take a 'Mercy Plea' . . . with no charges dismissed and no sentence reduction", the record reflects that the State offered a plea agreement that morning of thirty years in Cause 849 with a capped thirty years in Cause 229. *Appellant's Brief* at 18. Iraheta-Rosales repeatedly affirmed during the court's thorough questioning that he desired to reject that offer and proceed without the benefit of an agreement. At the conclusion of a subsequent sentencing hearing, the court imposed a sentence of forty years, with ten years

---

[6] Iraheta-Rosales observes that, here, the post-conviction court's order, in setting out the law for ineffective assistance claims in the context of guilty pleas, stated that a post-conviction petitioner "must show a reasonable probability that he would not have been convicted if he had gone to trial." *Appellant's Appendix Vol. 2* at 97 (citing *Segura v. State*, 749 N.E.2d 496, 499 (Ind. 2001)). Iraheta-Rosales correctly observes that the *Bobadilla* Court disapproved of dicta in *Segura* concerning consideration of the strength of the State's case when evaluating prejudice and clarified that "the ultimate result at trial (conviction versus acquittal) is not the determinative factor in these prejudice inquiries[.]" *Bobadilla*, 117 N.E.3d at 1287. Although the trial court cited to the "would not have been convicted" language as reflecting the state of the law, we find that, considering the court's analysis and the order in its entirety, any error was harmless.

suspended, on each of the two Class A felony charges and five years on the Class C felony, with the sentences to run concurrently, for an aggregate executed sentence of thirty years.

[20] The trial court concluded, and we agree, that "there is no evidence that Petitioner was in any manner prejudiced by Coleman's late arrival for trial or his failure to appear at prior hearings[,]" and he has failed to show that he received ineffective assistance of trial counsel.[7] *Appellant's Appendix Vol. 2* at 98. Accordingly, we affirm the trial court's determination that Coleman did not provide ineffective assistance of counsel.[8]

---

[7] Iraheta-Rosales raises the separate issue on appeal that the post-conviction court failed to rule on, or issue specific findings on, his ineffectiveness claim under the Indiana constitution and that it was required to do so under Post-Conviction Rule 1 § 6, providing that the court shall make specific findings of fact and conclusions of law on all issues presented. He maintains that remand is therefore necessary for the court to issue separate findings. We are not persuaded, however, that remand is warranted in this case. The post-conviction issue was whether Coleman provided ineffective assistance of counsel, and the post-conviction court addressed and rejected that claim, even if not addressing every argument raised by Iraheta-Rosales. Furthermore, Iraheta-Rosales has pointed us to no authority stating that federal and state constitutional ineffectiveness claims are distinct and require separate analysis. Indeed, we have found a number of cases where a defendant raised both a state and federal constitutional ineffectiveness claim, and the court analyzed the claims only under *Strickland*. *See e.g.*, *Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002); *Armstrong v. State*, 932 N.E.2d 1263, 1268 (Ind. Ct. App. 2010) ; *Shaw v. State*, 898 N.E.2d 465, 467-68 (Ind. Ct. App. 2008), *trans. denied*; *compare Hanks v. State*, 71 N.E.3d 1178, 1189 (Ind. Ct. App. 2017) (finding that remand was necessary on petitioner's voluntariness of guilty plea claim, where the post-conviction court analyzed ineffective assistance of counsel claim but did not issue findings on petitioner's voluntariness claim, and voluntariness of plea "is distinct from ineffective assistance of counsel"), *trans. denied*.

[8] We note that in his Reply Brief Iraheta-Rosales cites to *United State v. Cronic*, 466 U.S. 648, 662 (1984), where the United States Supreme Court created an exception to the *Strickland* inquiry, suggesting that in limited circumstances of extreme magnitude, "a presumption of ineffectiveness" may be justified and that such circumstances are, in and of themselves, "sufficient [to establish a claim of ineffective assistance] without inquiry into counsel's actual performance at trial." To the extent he is arguing that Coleman's representation was ineffective under *Cronic*, we reject his argument. First, a party cannot raise an argument for the first time in a reply brief. *Jones v. State*, 22 N.E.3d 877, 881 n.4 (Ind. Ct. App. 2014). Second, we do not find that Coleman's representation was the type of situation that would justify the *Cronic* presumption. Coleman did not provide a complete lack of representation. Coleman conducted discovery and appeared at some hearings including a child hearsay hearing and the record reflects that Coleman negotiated two plea

## II. Judge Pro Tempore Appointment

[21] Iraheta-Rosales contends that the trial court erred when, without prior notice to the parties, Judge Marchal presided as judge pro tempore at the post-conviction evidentiary hearing. Ind. Trial Rule 63 provides the procedure by which a judge pro tempore may be appointed if the regular judge is unavailable and states in relevant part:

> A judge who is unable to attend and preside at his court for any cause may appoint in writing a judge pro tempore to conduct the business of this court during his absence. The written appointment shall be entered in the records of the court. When duly sworn, or without being sworn if he is a judge of a court of this state, the judge pro tempore shall have the same authority during the period of his appointment as the judge he replaces.

T.R. 63(E).

[22] On February 18, 2019, after receiving the post-conviction court's January 10, 2019 findings and conclusions denying relief, Iraheta-Rosales requested and received from the court a copy of the document appointing Judge Marchal as pro tem. In it, Judge Stoner appointed, on September 20, 2018, Jeffrey Marchal as judge pro tempore for that same date.

[23] Iraheta-Rosales's argument is that the parties were not notified that Judge Marchal – who typically presides over post-conviction matters in his capacity as

---

agreements. While his representation may have been lacking in some respects, we do not find that this was the type of case to which *Cronic* applies.

magistrate – would be presiding as judge pro tempore. He argues, "Had Iraheta-Rosales received notice the elected Judge was not going to approve and countersign the Order, he would have objected and requested a continuance such that the elected Judge could render a final decision." *Appellant's Brief* at 24. He urges that, in his case, such would have been reasonable because Judge Stoner was the presiding judge when Coleman failed to timely appear for jury trial on March 23 – leaving Iraheta-Rosales "high and dry" and appearing in "jail garb" – and he was the judge who issued the arrest warrant. *Id*. Effectively, Iraheta-Rosales is arguing that Judge Stoner was better suited to assess Coleman's representation.

[24] Iraheta-Rosales provides no authority for the proposition that any objection posed would have required Judge Marchal not to serve as pro tem.[9] At best, any request for a continuance would have been within the court's discretion. Here, the allegations about Coleman failing to timely appear for jury trial, leaving Iraheta-Rosales waiting in jail garb, and Judge Stoner issuing an arrest warrant were well set out in the petition for post-conviction relief. Moreover, as the State observes, the direct appeal of Cause 849 was admitted as an exhibit,

---

[9] In contrast, Indiana Code section 33-33-49-32(c) provides that "[a] party to a superior court proceeding that has been assigned to a magistrate . . . may request that an elected judge . . . preside over the proceeding instead of the magistrate. . . . Upon a request made . . . by either party, the magistrate . . . shall transfer the proceeding back to the superior court judge." Iraheta-Rosales has provided us with no equivalent provision in the context of a judge pro tempore appointment.

so Judge Marchal "had access to a complete transcript . . . where trial counsel's tardiness was well-documented." *Appellee's Brief* at 25.

[25] In challenging the appointment, Iraheta-Rosales also notes that the document appointing Judge Marchal as judge pro tempore was not entered in the Chronological Case Summary (CCS). However, the CCS entries on September 20, 2018, the date of the post-conviction hearing, include:

> Hearing on Petition for Post-Conviction Relief (10:00 AM)
> (Judicial Officer: **Marchal, Jeffrey L. – PT**)
>
> Hearing Journal Entry (Judicial Officer: **Marchal, Jeffrey L. – PT**) Hearing Date: 9/20/18  Matter taken under advisement. Proposed findings and conclusions due by 12/13/18.  Court to make ruling upon receiving findings and conclusions from parties.

*Appellant's Appendix Vol. 2* at 11 (emphases added).  Although T.R. 63(E) requires the written appointment to be entered in the record, we find the CCS entry adequately reflects that Judge Marchal was acting as pro tem that date.[10] In sum, Judge Marchal was validly appointed, and we find no reversible error on this issue.[11]

---

[10] The CCS entry on January 10, 2019, the date of the order denying post-conviction relief, erroneously identifies the judicial officer as "Marchal, Jeffrey L. – MAG", that is, a magistrate; however, he properly signed the findings and conclusions as "Judge Pro Tempore." *Id*. at 12, 99.

[11] We note that the "expiration of a judge pro tempore's term does not necessarily end his or her authority," and that "once a judge pro tempore has begun consideration of the case," jurisdiction continued "as if he had been appointed special judge." *Douglas v. State*, 643 N.E.2d 7, 9 (Ind. Ct. App. 1994).  Thus, it was

[26] We affirm the post-conviction court's denial of Iraheta-Rosales's petition for post-conviction relief.

[27] Judgment affirmed.

Brown, J. and Tavitas, J., concur.

---

appropriate for Judge Marchal to issue the findings and conclusions, and Judge Stoner's approval thereof was not necessary.