**Scott GRIFFIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 29A02–9212–CR–622.**

Court of Appeals of Indiana, Second District.

July 7, 1993.

---

Karen R. McClure, Campbell Kyle Proffitt, Noblesville, for appellant-defendant.

Pamela Carter, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

FRIEDLANDER, Judge.

Scott Griffin appeals from the denial of his petition for post-conviction relief. We reverse.

On June 15, 1983, Griffin drove his vehicle off the road and collided with a telephone pole. Griffin had been drinking before the accident at a friend's house and a blood alcohol test revealed that his blood alcohol content (BAC) was .11%.

On June 23, Griffin was charged with Driving While Intoxicated, a class A misdemeanor.[1] After consulting with his attorney, Griffin decided to plead guilty. On September 14, Griffin signed a plea agreement with the state which read in relevant part:

> "Defendant attaches his signature hereto and acquieses [sic] therein and further acknowledges that all this is done intelligently, knowingly, and voluntarily upon and after consultation with his attorney."

*Record* at 24.

Griffin's guilty plea hearing was scheduled for October 4. Prior to any individual hearings, the court provided all of the defendants assembled in the courtroom with an *en masse* advisement of their constitutional and statutory rights. The court also explained, *en masse*, that the defendants were waiving those rights by pleading guilty. During Griffin's individual hearing, the court neglected to ascertain whether Griffin had heard or understood the court's earlier *en masse* advisements.

On February 28, 1992, Griffin filed a verified petition for post-conviction relief, seeking to have his conviction set aside. Griffin argued, among other things, that

---

1. IC 9–4–1–54.

his guilty plea had not been entered knowingly, intelligently and voluntarily. On September 2, following a hearing, the trial court denied Griffin's petition. Griffin now appeals from that denial, alleging, among other things, that the trial court failed to adequately inform him of his right to a trial by jury, right to confrontation and right against self-incrimination before accepting his guilty plea.

In a post-conviction relief proceeding, the petitioner bears the burden of establishing the grounds for relief by a preponderance of the evidence. Rule PC 1 § 5; *Grey v. State* (1990), Ind., 553 N.E.2d 1196. The post-conviction relief court is the sole judge of both the evidence and the credibility of the witnesses. *Id.* A petitioner who has been denied post-conviction relief is in the position of one who has received a negative judgment. *Schiro v. State* (1989), Ind., 533 N.E.2d 1201, *cert. denied* 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218. As a reviewing court, we will not reverse the post-conviction court's judgment unless the evidence is undisputed and leads inevitably to a conclusion opposite that of the trial court. *Id.*

A record must indicate that the defendant knew of and understood his rights when entering a guilty plea. *Snowe v. State* (1989), Ind.App., 533 N.E.2d 613. The trial court must preserve the colloquy on the record where the trial court determines for itself, without surmise, that a defendant has been informed of each right he is about to waive. *Id.* We will not defer to the trial court's ability to determine the question of voluntariness in the absence of a record which clearly demonstrates that the necessary specifics were discussed. *Id.* Before a guilty plea may be considered voluntary and intelligent, the record must disclose that the defendant knew he was waiving three particular constitutional rights: the right to trial by jury, the right to confrontation, and the right against self-incrimination. *Id.*, citing *Hatton v. State* (1986), Ind.App., 500 N.E.2d 1283 and *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. We will not presume an accused's waiver of these rights if the record is silent as to the accused's knowledge and understanding of these rights. *Snowe, supra.* A trial court's *en masse* advisement of rights is an acceptable procedure so long as the procedure is coupled with the court's personal interrogation of the defendant to determine whether the defendant understands both his rights and the concept of waiver. *Id.*

During Griffin's post-conviction hearing, the following exchange took place between Griffin and his attorney:

"Q. Okay. I want to change gears a little bit here somewhat and ask you some other questions about the hearing. I want to ask you about your understanding of your rights as a defendant in a criminal proceeding. At the time of the guilty plea hearing, did you understand the nature of your right to a speedy trial and that by pleading guilty, you were waiving that right?

A. No, I did not.

Q. There's another right, Scott, it's call[ed] a right to confront your accusers. At the time of the guilty plea hearing, did you understand the nature of the right to confront your accusers and that by pleading guilty, you were waiving that right?

A. No, I did not.

Q. Okay. And at the time of the guilty plea hearing, did you understand that by pleading guilty you were also waiving your right against self-incrimination?

A. No, I did not.

    *    *    *    *    *    *

Q. Did you hear and understand the advisements of the judge?

A. While we were in court, I was kind of sitting in the back and I was talking to my attorney like I said before. I was concerned with what would happen if my plea agreement wasn't accepted and he was, you know, he assured, we didn't really get into that but he assured me, you know, don't worry about it, it will be okay. I

wasn't really paying attention to what was being addressed to the entire group. What I remember is when I stood before the judge, him asking me, I believe he asked me if I knew what the maximum penalty was for operating a vehicle while intoxicated. That, that I do remember."

*Record* at 56–57, 76–77.

Following the hearing, the judge pro-tem denied Griffin's petition for post-conviction relief on the following basis:

"Gentlemen, I find, at least let me put it this way. The way I see the issues as far as I'm concerned, is the fact that the en masse advisement was good. If he didn't listen, that was his fault. He said he sat there and talked with his lawyer, he should have been listening. Because the Court's advisements at that point were very important obviously, because that's what he's complaining of now, that he didn't understand what the advisements were. But, it was through his own fault that he didn't hear or understand it. Now, the issue does [be]come whether those advisements have to be given when he steps before the Court. . . . [O]bviously, the attorney should have talked with him about the rights."

*Record* at 136–140.

 The trial court was mistaken. The trial court bore the responsibility of creating a record which contained an individual colloquy where the trial court determined for itself, without surmise, that Griffin had heard and understood the *en masse* advisement containing both the *Boykin* rights and the concept of waiver. The record discloses only that the trial court's *en masse* advisement concluded with the court's *en masse* query, "Any questions whatsoever? If you have a question, when you approach the bench with your counsel, please feel free to ask it prior to entering your plea. Any questions? Mr. Cavanaugh?" *Record* at 50, *exhibit* at 11–12. Nothing in the record suggests Griffin heard the trial court's invitation. Just as we may not presume that a defendant hears and understands an *en masse* advise-

ment, neither may we presume that a defendant hears and understands the consequences of an *en masse* query following the advisement.

Because the record fails to make an affirmative showing that Griffin understood either his rights or the concept of waiver, we cannot say his plea was knowing, intelligent, and voluntary and we reverse.

**Reversed and remanded for further proceedings consistent with this opinion.**

SULLIVAN and BAKER, JJ., concur.