**Roland BARKER, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 32A01–0311–PC–444.

Court of Appeals of Indiana.

July 21, 2004.

Transfer Denied Oct. 19, 2004.

Brian J. Johnson, Hostetter & Ohara, Brownsburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Roland Barker appeals the post-conviction court's denial of his petition for post-conviction relief. Barker raises one issue, which we restate as whether the post-conviction properly concluded that Barker's guilty plea was entered into knowingly, intelligently, and voluntarily. We affirm.

The relevant facts follow. On May 7, 1998, the trial court conducted a guilty plea hearing where Barker and eleven other defendants were present. The trial court gave the following en masse advisement of rights:

THE COURT: All right, please be seated. I'm going to ask you some questions. I need for you to answer verbally on the record. And I know we've got the windows open. It's hot in here and it's difficult to hear but if you could answer yes or no to my questions. The attorneys have given me all this paperwork indicating you wish to enter a guilty plea to a crime. I need to make sure that you understand the rights you are give up by pleading guilty. By pleading guilty you give up the right to have public and speedy trial by jury. You give up your right to confront and cross-examine any witness the prosecutors call to testify against you. You give up your right to have compulsory process to obtain witnesses in your favor through the issuance of subpoenas and you give up your right to require the State to prove your guilt beyond a reasonable doubt at a trial which you may not be forced to testify against yourself.

Do you understand the constitutional rights that you give up? If so say yes.

MASS RESPONSE: Yes.

THE COURT: Everyone says yes.

Transcript of Plea Hearing at 10–11. The trial court then questioned the defendants individually and addressed Barker as follows:

THE COURT: [Barker], you have been drinking today?

BARKER: No, sir.

THE COURT: How about last night?

BARKER: No.

THE COURT: If we test you, you won't test?

BARKER: Definitely not.

THE COURT: You're all bloodshot eyes and red-faced. You don't think you'll test?

BARKER: I know I won't.

THE COURT: Attorneys have given me this plea agreement indicating that you wish to enter a guilty plea to Count One, Operating While Intoxicated as a "D" felony. The prosecutor recommends a $1.00 plus court costs of $425.50, a sentence of five hundred and forty-five days at the Department of Corrections. That would be served on work release program. You'd get credit for two days served. You'd have five additional days pursuant to code and you'd get credit for five days already served on that. Your license would be suspended for seven hundred and thirty days from May 21, 1997 and you would continue to attend your substance abuse therapy on Thursday evenings. Is that your understanding of the agreement?

BARKER: Yes, sir.

*Id.* at 15–16. The State then laid out the factual basis for Barker's guilty plea to operating while intoxicated as a class D

felony,[1] and the trial court addressed Barker as follows:

THE COURT: Is that all correct?

BARKER: Yes.

THE COURT: You now say you're guilty of operating your vehicle while you were intoxicated, that your driving was impaired because of that intoxication and had a prior OWI within five years.

BARKER: Yes.

THE COURT: Any advantage of going to trial, Counsel?

COUNSEL: No, sir.

THE COURT: And he's going to serve this at the jail?

COUNSEL: Yes, sir.

STATE: Correct.

COUNSEL: We have discussed the starting date of that, your Honor. We'd like for it to start on the 1st of June if possible.

THE COURT: Okay. Make the standard entry as the voluntariness of the plea. The Court accepts the plea. [Barker], I'm going to sentence you on Count One, Operating While Intoxicated, a "D" Felony to five hundred and forty-five days to be served at the jail on the work release program pursuant to all the Sheriff's rules of that program plus five days pursuant to the Indiana Code 9–30–5–15. Give you credit for that time served plus two days on that other sentence. License [is] suspended for seven hundred and thirty days from May 21, 1997. Other counts are dismissed. And we need some kind of an order if you could give me that I'll sign it on that, uh treatment at 8:30 on Thursdays.

*Id.* at 17–18.

Barker did not file a direct appeal, but, on June 27, 2003, Barker filed a petition for post-conviction relief, arguing that he did not enter into his guilty plea knowingly, voluntarily, and intelligently because the trial court failed to advise him of his rights. After a hearing, the post-conviction court issued an order denying Barker's petition for post-conviction relief, and the order provided that:

*Findings of Facts:*

\* \* \* \* \*

2. On May 7, 1998, [Barker] appeared for a guilty plea hearing along with eleven other defendants. After conducting an "en masse" advisement of rights, the Court accepted a guilty plea from [Barker] to Operating While Intoxicated, a class D felony and imposed the agreed sentence. [Barker] now states that he did not knowingly and intelligently waive his rights because the Court failed to discuss the rights individually with him.

3. The transcript of the plea hearing indicates clearly that the Court advised all twelve of the defendants that by pleading guilty they would be giving up all of their "Boykin" rights. The court determined that the defendants (including [Barker]) specifically understood that they would be giving up their right to a trial by jury, the right to confront their accusers, and the right against self-incrimination. (pages 10 and 11 of the transcript).

---

**1.** Ind.Code § 9–30–5–1 (1998), Ind.Code § 9–30–5–3 (1998). I.C. § 9–30–5–1 was most recently amended in 2001. *See* Pub.L. No. 175–2001, § 5 (eff. July 1, 2001). I.C. § 9–

30–5–3 was most recently amended in 2001. *See* Pub.L. No. 291–2001, § 222 (eff. July 1, 2001).

4. The Court questioned [Barker] individually about the details of his plea agreement. The Court was concerned that [Barker] had been drinking (alcoholic beverages) on the day of the plea (transcript page 15). After determining that [Barker] had not been drinking, the Court continued with the plea hearing.

5. The Court recited the specific details of the plea agreement and questioned the petitioner if that was his understanding. He responded by saying "Yes, sir" (transcript page 16).

6. After the deputy prosecutor recited the factual basis for the plea, the Court again asked the petitioner if those facts were correct to which he responded "Yes."

7. The transcript does not reflect that the Court asked the petitioner individually if he understood the (Boykin) rights he was giving up by pleading guilty or if he had any questions about the plea or the rights he was giving up by pleading guilty. However, the Court had previously determined that the petitioner understood the rights he was giving up (transcript pages 10 and 11).

8. Hendricks Superior Court No. 2 is a small courtroom. The twelve defendants were sitting less than 20 feet away from the judge during the plea hearing. The judge would not have allowed [Barker] to enter the guilty plea unless the judge was assured that [Barker] understood that he was giving up his (Boykin) rights.

*Conclusions of Law:*

\* \* \* \* \*

2. An "en masse" advisement of rights is an acceptable procedure to determine if the defendant understands his or her rights and the concept of waiver.

3. In the present case, there is no question that the twelve defendants were properly advised "en masse" of the rights they were giving up by pleading guilty, and that the Court was satisfied that all twelve, including [Barker], understood and knowingly waived their rights. The Court repeated on the record the defendants' answers of "yes" when asked if they understood the rights they were giving up by pleading guilty. The Code of Judicial Conduct requires trial judges to establish, maintain and enforce high standards of conduct and personally observe those standards in order to preserve the integrity and independence of the judiciary. *See:* Canon 1 of the Indiana Code of Judicial Conduct. It logically follows that the trial judge would not have stated "everyone says yes" if everyone had not said "yes" when asked if the understood the rights they were giving up by pleading guilty. To conclude otherwise would be a challenge to the honesty and integrity of the judge.

Appellant's Appendix at 10–14 (internal citations omitted).

The sole issue is whether the post-conviction court properly concluded that Barker's guilty plea was entered into knowingly, intelligently, and voluntarily. In order to prevail on his petition for post-conviction relief, Barker had to establish by a preponderance of the evidence that he was entitled to relief. *Canaan v. State,* 683 N.E.2d 227, 228–29 (Ind.1997), *reh'g denied, cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). Having been denied relief, however, Barker is

in the position of one who appeals a negative judgment, and the post-conviction court's denial of his petition for post-conviction relief will not be reversed unless the evidence is undisputed and leads inevitably to an opposite conclusion. *Bobbitt v. State,* 725 N.E.2d 521, 522 (Ind.Ct.App. 2000).

When a defendant enters into a guilty plea, the record must indicate that the defendant knew of and understood his rights. *Snowe v. State,* 533 N.E.2d 613, 616 (Ind.Ct.App.1989). "The trial court must preserve the colloquy on the record where the trial court determines for itself, without surmise, that a defendant has been informed of each right he is about to waive." *Id.* In the absence of a record that clearly demonstrates that the necessary specifics were discussed, we will not defer to the trial court's ability to determine the question of voluntariness. *Griffin v. State,* 617 N.E.2d 550, 552 (Ind.Ct. App.1993). Before a guilty plea may be considered voluntary and intelligent, the record must disclose that the defendant knew he was waiving three particular constitutional rights: the right to trial by jury, the right to confrontation, and the right against self-incrimination. *Id.* (citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). We will not presume an accused's waiver of these rights if the record is silent as to the accused's knowledge and understanding of these rights. *Id.*

A trial court's en masse advisement of rights is an acceptable procedure. *Id.* However, when conducting an en masse advisement of rights, the trial court must determine whether each defendant understands his rights and the concept of waiver. *Id.* When the record is silent regarding the defendant's knowledge and understanding of his rights and the concept of waiver, the defendant is entitled to post-conviction relief. *Blunt–Keene v. State,* 708 N.E.2d 17, 19 (Ind.Ct.App.1999).

Barker argues that the trial court failed to properly advise him of his rights. Barker acknowledges that an en masse advisement of rights is acceptable, but he argues that the trial court erred by not personally interrogating him to determine whether he understood the concept of waiver and the·constitutional rights he was waiving by pleading· guilty. Barker likens this matter to *Blunt–Keene,* 708 N.E.2d 17, and *Griffin,* 617 N.E.2d 550. In *Blunt–Keene,* the defendant pleaded guilty, and during the guilty plea hearing, the trial court conducted an en masse advised of rights for the defendant and several other defendants who were also present. *Id.* at 18. On post-conviction relief, the defendant argued that her guilty plea was not entered into knowingly, voluntarily, and intelligently because the trial court did not advise her of her rights. *Id.* at 19. The post-conviction court denied the defendant's petition, and, on appeal, we held that the defendant had demonstrated her entitlement to post-conviction relief because the record was silent regarding the defendant's understanding of her *Boykin* rights and the concept of waiver. *Id.* at 19–20.

In *Griffin,* the defendant pleaded guilty, and during the guilty plea hearing, the trial court provided the defendant and the other defendants assembled in the courtroom with an en masse advisement of their constitutional and statutory rights. 617 N.E.2d at 551. The trial court also explained, en masse, that the defendants were waiving those rights by pleading guilty. The trial court did not ask the group whether they understood the advisement. Moreover, during the defendant's individual hearing, the trial court did not ask the defendant if he had heard or understood the trial court's earlier en masse

advisements. *Id.* The defendant filed a petition for post-conviction relief, arguing that his guilty plea was not entered into knowingly, voluntarily, and intelligently because the trial court did not advise him of his rights. *Id.* at 551–552. The post-conviction court denied Griffin's petition. *Id.* at 552. On appeal, we noted that the trial court bore the responsibility of creating a record which contained an individual colloquy where the trial court determined for itself, without surmise, that the defendant had heard and understood the en masse advisement containing both the *Boykin* rights and the concept of waiver. *Id.* at 553. We reversed, holding that "[n]othing in the record suggest[ed] [the defendant] heard the trial court's invitation. Just as we may not presume that a defendant hears and understands an en masse advisement, neither may we presume that a defendant hears and understands the consequences of an en masse query following the advisement." *Id.*

■ Here, as in *Blunt–Keene* and *Griffin*, the trial court conducted an en masse advisement of rights to several defendants, including Barker. During the advisement of rights, the trial court instructed Barker and the other defendants that by pleading guilty, they were giving up their right to trial by jury, the right to confrontation, and the right against self-incrimination. However, unlike the trial courts in *Blunt–Keene* and *Griffin*, here, the trial court asked the defendants, including Barker, if they heard and understood their rights. Specifically, upon reading the defendants their rights, the trial judge said, "[d]o you understand the constitutional rights that you give up? If so say yes." Transcript of Plea Hearing at 11. The record indicates that all twelve defendants said, "[y]es," and then the trial judge said, "[e]veryone says yes." *Id.* The trial judge then addressed Barker individually, dis-

cussing the specifics of Barker's plea agreement. As the post-conviction court concluded, "there is no question that the twelve defendants were properly advised 'en masse' of the rights they were giving up by pleading guilty, and that the Court was satisfied that all twelve, including [Barker], understood and knowingly waived their rights." Appellant's Appendix at 13. Based upon our review of the record, we cannot say that the evidence is undisputed and leads inevitably to an opposite conclusion of the post-conviction court. *See, e.g., Mescher v. State,* 686 N.E.2d 413, 414–415 (Ind.Ct.App.1997) (holding that the defendant's guilty plea was entered into knowingly, voluntarily, and intelligently), *reh'g denied, trans. denied.*

For the foregoing reasons, we affirm the post-conviction court's denial of Barker's petition for post-conviction relief.

Affirmed.

DARDEN, J., and ROBB, J., concur.