## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 30 2017, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Joanna Green
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronnie Rice,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

May 30, 2017

Court of Appeals Case No.
45A05-1608-PC-1951

Appeal from the Lake Superior Court

The Honorable Diane R. Boswell, Judge

The Honorable Natalie Bokota, Magistrate

Trial Court Cause No.
45G03-1410-PC-18

**Altice, Judge.**

## Case Summary

[1] Ronnie Rice appeals from the denial of his petition for post-conviction relief (PCR Petition). He presents four issues for our review, which we reorder and restate as follows:

1. Was Rice's guilty plea knowingly, voluntarily, and intelligently made?

2. Did the post-conviction court err in rejecting his claim of ineffective assistance of trial counsel?

3. Did the post-conviction court err in rejecting his claim of ineffective assistance of appellate counsel?

4. Did the trial court abuse its discretion in sentencing him to life without the possibility of parole (LWOP)?

[2] We affirm.

**Facts & Procedural History**

[3] Maxine Urbanczyk arrived to work at Kentucky Fried Chicken in Merrillville at around 8:30 a.m. on December 10, 2007. A store surveillance video shows Ms. Urbanczyk going to the back door, looking through a peephole, opening the door, and appearing to be familiar with the person on the other side. She handed the person a cordless telephone and then placed a piece of cardboard such that the door would not completely close, thus allowing access to the restaurant. A short time later, the video shows Rice, who worked at the restaurant, entering through the back door wearing a grey colored sweatshirt. Another surveillance camera captured Rice crouching down behind the front

counter where the safe is located and taking items from the safe. A few minutes later, Rice is seen exiting the back door. Our Supreme Court, in considering the nature of the offense upon review of Rice's direct-appeal challenge to his LWOP sentence, summarized what transpired while Rice was inside the restaurant.

> Rice arrived at work to rob the safe, but he needed Ms. Urbanczyk's help to do it. Not wanting to leave any witnesses to his crime, he attacked Ms. Urbanczyk from behind with both a chair and a hammer. She sustained 15 head injuries including facial lacerations, cranial factures, brain contusions, and cranial hemorrhaging; a fractured rib cage; and a bruised left lung. She died from "extensive head injuries with chest injuries caused by blunt force trauma."

*Rice v. State*, 6 N.E.3d 940, 947 (Ind. 2014) (record citation omitted).

[4] A short time later two employees arrived at the restaurant but were unable to gain access through the front door. Rice came from the back of the building, approached one of his coworker's cars, took off his "greyish looking" sweatshirt, and put it in the back of her car. *Sentencing Transcript* at 67-8. Rice then asked his other coworker if he could wear his black sweatshirt.

[5] During one of his interviews with police, Rice admitted that after he took the money from the safe, he approached Ms. Urbanczyk from behind and pushed her down and then hit her with a chair. At some point he grabbed a hammer and "just went berserk." *Sentencing Hearing Exhibit 75A* at 29.

[6] During the investigation, police located a hammer behind a filing cabinet at the crime scene. Swabs of blood taken from Rice's grey sweatshirt and jeans matched Ms. Urbancyzk's DNA profile. Ms. Urbanczyk's store keys were found at the police station where Rice had hidden them while being interviewed. Ms. Urbancyzk's jacket and bags of cash totaling $3667.89 were recovered from a dumpster near the area from where Rice appeared as he approached the front of the restaurant and encountered his coworkers.

[7] On December 12, 2007, Rice was charged with murder, a felony, and murder in the perpetration of a robbery, a felony. Rice's family hired an attorney to represent Rice.[1] On February 5, 2008, the State amended the charging information to include a charge of robbery as a class B felony. The State also filed a request to seek a sentence of LWOP. The LWOP designation listed one aggravator—Rice killed the victim while committing or attempting to commit robbery.

[8] On September 18, 2008, Rice filed a motion to suppress his statements to police and evidence gathered during a warrantless search of his home. The trial court conducted a suppression hearing over three days and issued an order denying Rice's motion to suppress on February 24, 2009. Rice's belated motion for

---

[1] Attorney King testified at the post-conviction hearing that his first order of business in representing Rice was to meet with the prosecutor and try to dissuade the State from seeking the death penalty.

certification for interlocutory appeal was granted by the trial court, but this court denied his motion to accept jurisdiction.

[9] On February 2, 2010, the trial court granted Rice's motion to continue the trial to afford his mitigation expert additional time to investigate and prepare a report. On February 16, 2010, the trial court granted Rice's petition for public fund payment and reimbursement for mitigation-expert expenses.

[10] On January 18, 2011, six days before his scheduled jury trial, Rice pled guilty as charged without the benefit of a plea agreement. Rice submitted a statement of facts to serve as the factual basis for his guilty plea and therein acknowledged that he faced a sentence of LWOP and that sentencing would be left to the discretion of the trial court. After several continuances, a sentencing hearing was held January 9 through 12, 2012. The State requested that the court impose a sentence of LWOP. As mitigating evidence, Rice's trial counsel called his mother and sister as witnesses and submitted three exhibits. At the conclusion of the hearing, the trial court sentenced Rice to LWOP.

[11] Rice exercised his right to directly appeal to our Supreme Court. On appeal, Rice argued that the trial court erred in considering non-statutory aggravating circumstances in imposing a sentence of LWOP and that his sentence of LWOP was inappropriate. After holding oral argument, the Supreme Court issued an order directing the trial court to revise its sentencing order to comport with case law and to clarify whether it had relied upon non-statutory aggravating factors in imposing a sentence of LWOP. *Rice v. State*, No. 45S00-

1206-CR-343, Order Remanding for Revised Sentencing Order (Ind. Feb. 12, 2013). The trial court issued a revised sentencing order imposing a sentence of LWOP. Rice again appealed to the Supreme Court, arguing that the sentencing order remained deficient. *See Rice v. State*, 6 N.E.3d 940, 942 (Ind. 2014). In the alternative, Rice requested that the Court revise his sentence to a term of years. *Id*. at 946. The Court found no abuse of discretion by the trial court in identifying aggravating factors and concluded that neither the nature of the offense nor the character of the offender warranted a revision of Rice's sentence. *Id*. at 946-47.

[12] Rice, pro se, filed a PCR Petition on October 8, 2014. This petition was later amended by counsel on May 15, 2015. The post-conviction court held an evidentiary hearing on January 13, 14, and 15, 2016. The post-conviction court denied Rice's PCR petition on August 2, 2016. Rice now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[13] In a post-conviction proceeding, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134, 1138 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id*. (quoting *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction

court's conclusion. *Id*. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000)).

## 1. Guilty Plea

Rice argues that his guilty plea was not knowing, voluntary, and intelligent.[2] Specifically, he asserts that he did not understand that by pleading guilty he was also waiving his right to have a jury determine his sentence. He claims that his trial counsel misled him into thinking that pleading guilty with no benefit in exchange for his plea was in his best interest.[3]

With regard to sentencing, a guilty-plea defendant may waive his or her Sixth Amendment right to have a jury determine, beyond a reasonable doubt, all facts legally essential to the sentence so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. *Averitte v. State*, 824 N.E.2d

---

[2] Rice is correct that post-conviction review is the appropriate mechanism by which to challenge the validity of his guilty plea. *See Prowell v. State*, 687 N.E.2d 563, 564 n.1 (Ind. 1997) ("when a defendant pleads guilty, he may challenge only sentencing errors on direct appeal, not alleged errors involving his guilty plea or conviction") (citing *Tumulty v. State*, 666 N.E.2d 394 (Ind. 1996)) (emphasis in original). The post-conviction court erred in finding that Rice had waived his right to challenge the validity of his guilty plea by not raising such argument in his direct appeal. The post-conviction court also concluded, however, that even if the issue was not waived, Rice's claim was meritless.

[3] Rice does not dispute that he was advised of and understood that by pleading guilty he waived his right to trial by jury, his right to confrontation, and his right against self-incrimination. *See Griffin v. State*, 617 N.E.2d 550, 552 (Ind. Ct. App. 1993) (noting that before a guilty plea may be considered voluntary and intelligent, the record must disclose that the defendant knew he was waiving these particular constitutional rights).

1283, 1287 (Ind. Ct. App. 2005) (citing *Blakely v. Washington*, 542 U.S. 296, 310-312 (2004)). At the post-conviction relief hearing, Rice's trial counsel testified that he advised Rice that he could have a jury determine his sentence if he did not plead guilty. Rice did not present any evidence to dispute this fact.

[16] Additionally, we note that at the guilty plea hearing, the trial court advised Rice of his constitutional rights and Rice indicated his understanding that he still faced a sentence of LWOP. Rice also submitted a document titled "Defendant's Statement of Facts Re: Guilty Plea" that set forth the factual basis for the guilty plea and further provided:

> I [referring to Rice] further understand that I will still face the possible penalty for my crimes of life without parole and that by pleading guilty, I am giving up my right to have a jury consider evidence and recommend the appropriate penalty to the Court. Rather, I understand that the Court will conduct a sentencing hearing at a future date and that the Court alone will have authority to determine my sentence for the crimes I am pleading guilty to.

*Direct Appeal Appendix Vol. One* at 159-60. During the guilty-plea hearing, Rice acknowledged his agreement with this statement and also affirmed that he had read, understood, and signed the document. Rice was fully aware that even by pleading guilty he faced a possible sentence of LWOP and that he was putting himself at the mercy of the trial court rather than having a jury determine his sentence.

[17] To the extent Rice also claimed that he was misled by his trial counsel into believing that he would benefit from pleading guilty, the post-conviction court disagreed. The post-conviction court first noted that there was no evidence that the State was willing to offer Rice a plea agreement with a different outcome. Second, the post-conviction court also noted that Rice's trial counsel explained that, in his experience with cases of such a brutal nature, Rice stood a better chance of avoiding a sentence of LWOP if he accepted responsibility and submitted himself to the mercy of the trial court rather than asking a jury to decide his fate. As noted by the post-conviction court, simply because the trial court ultimately imposed a sentence of LWOP, does not establish that Rice was misled into pleading guilty.

[18] We agree with the post-conviction court. Rice did not establish that he did not knowingly, voluntarily, and intelligently enter his guilty plea. The record demonstrates that Rice was fully aware of his rights and made the decision to follow counsel's advice to accept responsibility by pleading guilty. He was not misled. Rather, he expressly acknowledged that even with pleading guilty and leaving sentencing to the trial court's discretion, he still faced the possibility of LWOP.

## 2. Ineffective Assistance of Trial Counsel

[19] A petitioner will prevail on a claim of ineffective assistance of counsel only upon a showing that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the petitioner.

*Bethea*, 983 N.E.2d at 1138.  To satisfy the first element, the petitioner must demonstrate deficient performance, which is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment."  *Id.* (quoting *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002)).  To satisfy the second element, the petitioner must show prejudice, which is "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different."  *Id.* at 1139.  Failure to satisfy either element will cause an ineffectiveness claim to fail.  *Carrillo v. State*, 982 N.E.2d 461, 464 (Ind. Ct. App. 2013).  Thus, if a petitioner cannot establish prejudice, we need not evaluate the reasonableness of counsel's performance.  *Id.*

[20]  There is a "strong presumption" that counsel rendered adequate service.  *Myers v. State*, 33 N.E.3d 1077, 1089 (Ind. 2015) (quoting *Bethea*, 983 N.E.2d at 1139).  "We afford counsel considerable discretion in choosing strategy and tactics, and '[i]solated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.'"  *State v. Hollin*, 970 N.E.2d 147, 151 (Ind. 2012) (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001)) (alteration in original).  Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).

[21] Rice argues that his trial counsel rendered ineffective assistance when he advised him to plead guilty and waive his right to have a jury determine his sentence. In the context of a guilty plea, a petitioner must establish a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have instead insisted on going to trial. *Scott v. State*, 986 N.E.2d 292, 296 (Ind. Ct. App. 2013). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (quoting *Strickland*, 466 U.S. at 694).

[22] The evidence against Rice was overwhelming. Rice's trial counsel testified at the post-conviction hearing and explained that his strategy in advising Rice to plead guilty without the benefit of a plea agreement was for Rice to receive some consideration for having wholly accepted responsibility for the crimes. Trial counsel further explained that in his experience, presenting a case of this nature to a jury would have created a "greater challenge to avoid the ultimate penalty sought than going directly to the Court."[4] *Post-Conviction Transcript* at 13. Trial counsel stated that he believed that "any consideration that would be given was likely to come from a professional, a judge, [rather] than a jury." *Id*. at 14.

---

[4] Trial counsel noted that a trial court was without discretion if a jury recommended LWOP. *See* Ind. Code § 35-50-2-9(e) (providing that "[i]f the jury reaches a sentencing recommendation [with regard to LWOP], the court *shall* sentence the defendant accordingly") (emphasis supplied).

[23]     Trial counsel's opinion was based on the circumstances of the crime and the evidence thereof, which would have painted a horrific picture of the last moments of Ms. Urbancyzk's life as Rice brutally attacked her with first a chair and then a hammer in order to make sure there were no witnesses to his theft of money. We agree with the post-conviction court that trial counsel's decision to advise Rice to plead guilty and give up his right to have a jury decide his sentence was clearly a strategic decision and wholly reasonable given the circumstances and brutal nature of the crime.

[24]     Rice also asserts that the post-conviction court failed to address his argument that trial counsel was ineffective because he advised Rice to plead guilty rather than further pursue a challenge to the voluntariness of his confession at trial, which would have, in turn, preserved the issue for review. Rice, however, does not explain how he was prejudiced. Indeed, even if we assume that Rice's confession was obtained in violation of his constitutional rights and therefore excluded, there was overwhelming independent evidence of his guilt. That evidence clearly incriminated Rice in Ms. Urbanczyk's death and would have included details of how Rice bludgeoned her to death with a hammer as well as gruesome pictures of the aftermath. Given the circumstances of the crime and the overwhelming evidence, Rice would be hard pressed to make a plausible argument that by not pleading guilty, the result of a trial would have been any different.

[25]     Rice argues that the post-conviction court failed to address his claim that trial counsel's argument that a sentence of LWOP would be disproportionate and

racially-based was unreasonable and poorly presented. Trial counsel testified that he spent a significant amount of time accumulating information about other murder cases in Lake County in order to show a racial bias as it concerned the decision to seek sentences of death or LWOP. Trial counsel put into evidence the probable cause affidavit and charging information from thirty-nine other murder cases in Lake County occurring in a five-year period ending in August 2011. Trial counsel sought to show that the State pursued the death penalty or LWOP in Lake County only when the victim was Caucasian and the defendant was a minority, with very few exceptions. Trial counsel testified that he was trying to point out that Rice's crime was "not a particularly heinous offense" as compared with other murder cases where the State sought only a term of years. *Post-Conviction Transcript* at 34. In light of the information he had gathered, trial counsel argued that a sentence of LWOP was therefore inappropriate, especially if based only on the fact Rice is a minority.

[26] As noted by Rice, the trial court and the State attempted to refute trial counsel's argument by pointing to capital or LWOP cases not included in trial counsel's evidence. Rice faults his trial counsel for not "stand[ing] by the evidence he presented and argue its mitigating effect." *Appellant's Brief* at 30. We have reviewed the record and reject Rice's claim that counsel performed deficiently in this respect. Rice's trial counsel adequately presented this argument to the court and was able to get his point across even though he did not explicitly distinguish those cases referenced by the trial court or the State. Indeed, as

acknowledged by Rice, the cases mentioned by the trial court and the State did not disprove trial counsel's point.

[27] Rice argues that his trial counsel rendered ineffective assistance in failing to adequately investigate and present available mitigation during the penalty phase. At the sentencing hearing, Rice's trial counsel called two witnesses on his behalf and presented the evidence in support of his disproportionate-sentence argument. Rice's mother testified that Rice came from a broken home and that his father had been violent at times. She further detailed that Rice had been very close with his grandmother and that after her death he became depressed and seemed to withdraw. She described her son as a kind-hearted, loving person who was never violent. Rice's sister echoed their mother's sentiments about Rice's nature and disposition and explained that Rice was under stress and was depressed at the time he committed the crimes. Both noted that Rice had a gambling problem and money-related issues associated therewith. Trial counsel did not present evidence from the mental health expert he had retained.

[28] Rice called several witnesses at the post-conviction hearing—his sister, who testified in greater detail about their dysfunctional family, and five additional lay witnesses who each testified as to Rice's non-violent nature, his rough upbringing, and/or his dysfunctional family. Each witness claimed they would have testified on Rice's behalf at his sentencing hearing had his trial counsel asked them. Rice also presented the testimony of Dr. Bart Ferraro, a clinical psychologist, who evaluated Rice in 2015. Based on a review of the case file

and interviews with family members, Dr. Ferraro concluded that Rice suffered from a depressive disorder not otherwise specified and a mixed personality disorder. He further explained the impact Rice's upbringing had on him generally and on the day of the crime. Rice asserts that had trial counsel offered the testimony of the lay witnesses and Dr. Ferraro at the sentencing hearing, there was a reasonable probability that he would have been sentenced to a term of years rather than LWOP.

[29] When questioned at the post-conviction hearing, Rice's trial counsel explained he had reservations about the impact some of the potential witnesses would have had at sentencing,[5] so he did not call them to testify on Rice's behalf. He further explained that he did not call his mitigation expert as a witness because he believed that Rice's mother, who he found to be a "very bright, very articulate woman," would portray the substance of the expert's findings in a "very credible manner" with a measure of emotion that only a mother who loves her son could provide. *Post-Conviction Transcript* at 22. Trial counsel believed Rice's mother "would be impactive in terms of defining Mr. Rice beyond the four corners of the charges against him." *Id.* at 23. He also noted that Rice's lack of criminal history was a crucial mitigating factor.

---

[5] Trial counsel expressed particular concern for calling Rice's father, noting that after meeting with Rice's father, he "did not form a positive impression" of him and found him to be "verbally combative." *Post-Conviction Transcript* at 22.

[30] The post-conviction court summarized the testimony of the various witnesses Rice submitted as providing possible mitigating evidence for sentencing purposes. With regard to Dr. Ferraro's testimony, the post-conviction court noted that although Dr. Ferraro believed Rice suffered from the specified disorders, he could not say that Rice was under the influence of an extreme mental or emotional disturbance at the time of the crime or that Rice's capacity to conform his conduct was substantially impaired as a result of mental disease or defect at the time of the crime.

[31] The post-conviction court also noted trial counsel's efforts in terms of investigating and presenting mitigating evidence at the sentencing hearing. Specifically, Rice's trial counsel had sought to hire a psychiatric expert without beneficial results. Further, the post-conviction court noted that although trial counsel did not call the mitigation expert as a witness on Rice's behalf for purposes of sentencing,[6] trial counsel was privy to all of the information gathered by the expert, including interviews with fourteen of Rice's family members and friends, and his conclusions based thereon. Finally, the post-conviction court noted that trial counsel had personally met with several individuals associated with or related to Rice. Ultimately, the post-conviction

---

[6] Rice's trial counsel retained Dr. George Savarese, a mitigation expert, who researched Rice and Rice's family and consulted with trial counsel. Trial counsel attempted to use Dr. Savarese's assessment of Rice in support of the motion to suppress Rice's confession to police. Based on his research of Rice and Rice's family, Dr. Savarese concluded that Rice had cognitive deficits manifesting in a propensity for dissociation, susceptibility to contrasting extremes, and memory deficits. Dr. Savarese also concluded that Rice suffered from depression, dependent personality disorder, and bipolar disorder.

court concluded that Rice's trial counsel adequately investigated mitigating circumstances and made a "tactical decision" with regard to how such circumstances were presented to the court for its consideration in sentencing. *Appellant's Appendix* at 112. We have reviewed the record and cannot say that it supports a conclusion opposite that reached by the post-conviction court. Rice's trial counsel was not ineffective with regard to his investigation and presentation of mitigating circumstances for purposes of sentencing.

### 3. Ineffective Assistance of Appellate Counsel

We review claims of ineffective assistance of appellate counsel using the same standard applicable to claims of ineffective assistance of trial counsel. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). Accordingly, to prevail on his claim, Rice was required to show both that counsel's performance was deficient and that the deficiency resulted in prejudice. *Id.* Judicial scrutiny is highly deferential regarding a claim that counsel was ineffective in failing to raise an issue on appeal thus resulting in waiver for collateral review, and the defendant must overcome the strongest presumption of adequate assistance. *McKnight v. State*, 1 N.E.3d 193, 204 (Ind. Ct. App. 2013) (citing *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006)).

On direct appeal to our Supreme Court, appellate counsel challenged whether the trial court impermissibly relied on non-statutory aggravators and whether a sentence of LWOP was inappropriate for Rice. Rice argues that his appellate counsel rendered ineffective assistance by failing to sufficiently state the

appellate claims in terms of federal constitutional violations, thus failing to preserve them for federal habeas review.

[34] The post-conviction court concluded that Rice failed to prove that he was prejudiced by appellate counsel's advocacy. Rice, citing *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010), correctly asserts that federal habeas review exists only for violations of federal law. (providing that "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts") (emphasis in original)). Specifically, Rice maintains that appellate counsel should have argued that his right to due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution were violated when the trial court considered and weighed non-statutory aggravating factors in violation of state law.

[35] Rice's argument itself sets forth why habeas review is not available. Rice clearly states that his argument is based on a violation of *state* law. The United States Supreme Court has repeatedly held that "'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S., at 67-68.

[36] Further, the United States Supreme Court's holding in *Wilson*, *supra*, actually cuts against his argument. The Supreme Court granted certiorari and vacated an opinion of the Seventh Circuit Court of Appeals granting habeas relief on a

claim the Seventh Circuit characterized as whether "the Indiana trial court considered non-statutory aggravating circumstances … in contravention of *state law*." *Wilson*, 562 U.S. at 5. The Supreme Court noted that the Seventh Circuit opinion "contained no hint that it thought the violation of Indiana law it had unearthed also entailed the infringement of any federal right." *Id*. As noted above, Rice's argument is based on alleged violation of state law. Rice does not articulate any specific violation of federal law with regard to his sentencing. Rather, he simply reiterates the arguments he made on direct appeal to our Supreme Court regarding the trial court's consideration of non-statutory aggravating factors in sentencing Rice to LWOP with a cursory suggestion that such violated his right to due process and equal protection under the Fifth and Fourteenth Amendments of the United States Constitution.

[37] In light of the Supreme Court's holding in *Wilson*, any attempt by appellate counsel to "federalize" the argument that his sentence was in violation of state law would not have preserved a meritorious claim for habeas review. The post-conviction court did not err in concluding that appellate counsel was not ineffective.

### 4. Sentencing

[38] Rice argues that the trial court abused its discretion in imposing a sentence of LWOP. Rice acknowledges that our Supreme Court reviewed his allegations that the trial court improperly considered non-statutory aggravating factors and concluded that the trial court did not abuse its discretion. Rice now claims that

our Supreme Court "side-stepped the fact the trial court explicitly considered Rice's future dangerousness in [the] revised sentencing order." *Appellant's Brief* at 37.

[39] As a general rule, when a court decides an issue on direct appeal, the doctrine of *res judicata* applies, thereby precluding its review in post-conviction proceedings. *Ben-Yisrayl*, 738 N.E.2d at 258. The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind. 1998). Our Supreme Court has already reviewed the sentence imposed and held that the trial court did not abuse its discretion in sentencing Rice to LWOP. Rice's argument is barred by *res judicata*.

[40] Judgment affirmed.

Riley, J. and Crone, J., concur.