## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 29 2018, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jeffrey R. Wright
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Hanks,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | May 29, 2018<br><br>Court of Appeals Case No.<br>10A01-1712-PC-2780<br><br>Appeal from the<br>Clark Circuit Court<br><br>The Honorable<br>Andrew Adams, Judge<br><br>Trial Court Cause No.<br>10C01-1106-PC-7 |

**Kirsch, Judge.**

[1] Gary Hanks ("Hanks") pleaded guilty to Class A felony child molesting and was sentenced to fifty years. He filed a petition for post-conviction relief, which

the post-conviction court denied. Hanks appealed the denial of post-conviction relief, and this court affirmed in part and remanded in part.[1] This appeal follows remand, and Hanks raises one issue that we restate as: whether the post-conviction court erred when it determined that Hanks's plea was entered into knowingly, intelligently, and voluntarily.

[2] We affirm.

## Facts and Procedural History[2]

[3] On July 20, 2000, the State charged Hanks with one count of Class A felony child molesting and four counts of Class C felony child molesting. The charges stemmed from allegations that Hanks had been sexually abusing a child over the course of months or years, when the child was four to seven years old. The child was a relative of Hanks's wife, and the abuse occurred while the child was living with Hanks and his wife. The allegations included that Hanks touched the child with his penis, mouth, and tongue, and engaged in digital penetration and sexual intercourse. After he was charged, Hanks gave a taped statement to police in which he admitted inappropriate touching, on the child's vagina and buttocks with his fingers and mouth, and that the victim touched Hanks's penis.

[4] After the withdrawal of Hanks's private counsel, the trial court appointed the Clark County public defender, and on February 13, 2001, attorney Christopher

---

[1] *Hanks v. State*, 71 N.E.3d 1179 (Ind. Ct. App. 2017), *trans. denied*.

[2] We take some facts from our decision rendered in the prior appeal.

Sturgeon ("Sturgeon") entered his appearance for Hanks. On March 7, 2001, Sturgeon sent a letter to Hanks, then in jail, about a plea offer that Sturgeon had received from the State. Under the offer ("the thirty-year offer"), Hanks would plead guilty to the Class A felony charge, and the State would recommend a thirty-year sentence, which at the time was the presumptive sentence for a Class A felony, and would dismiss the four Class C felony charges. In his letter, Sturgeon emphasized that the prosecutor "*will not* reduce" the thirty-year plea offer and would not consider "anything less." *Pet'r's Ex. G.* (emphasis in original). Sturgeon advised Hanks of the possibility of a ninety-year maximum aggregate sentence if Hanks went to trial and was found guilty of all five felony charges. Sturgeon advised Hanks that he needed to "make a final decision" as to whether he wanted to accept the offer or go to trial, which was set for March 20, 2001, just over a month away, stating, "I need to know what your choice is immediately." *Id.* Hanks did not accept the thirty-year offer. *Tr.* at 51. On Hanks's motion, trial was continued to June 26, 2001.

[5] In May 2001, the State extended a new plea offer to Hanks ("the open plea offer"). Under the open plea offer, Hanks would plead guilty to the Class A felony charge, the State would make no sentencing recommendation, and the trial court would retain discretion to impose any sentence between the twenty-year statutory minimum and the fifty-year statutory maximum. In return, the State would dismiss the four Class C felony charges. On June 11, 2001, Hanks accepted the open plea offer and entered into a plea agreement whereby he

pleaded guilty to the Class A felony child molesting count, and the State dismissed all other counts. *Resp. Ex. A*.[3]

[6] At his July 11, 2001 sentencing hearing, before Judge Daniel F. Donahue ("Judge Donahue"), the trial court advised Hanks, and Hanks stated that he understood, that the sentencing range was twenty to fifty years and that aggravating and mitigating circumstances could be considered in determining the sentence. Hanks affirmed that he had discussed the plea agreement with his attorney before signing it. The trial court also included the following exchanges:

Court: [Y]ou understand that it is a blind plea and the minimum sentence, the bare minimum sentence you can get in this case is twenty years? Do you understand that?

Hanks: Yes sir.

Court: And you could get a maximum of fifty years. Do you understand that?

Hanks: Yes sir.

Court: So has there been any discussion as to what I might do in this particular case?

---

[3] We note that the plea agreement spells Hanks first name as "Garry."

Hanks:  No sir.

*Appellant's App. Vol. 2* at 31-32.  Hanks also agreed that his plea was made of his own "free choice and decision" and that he was satisfied with his attorney.  *Id.* at 33.

[7]    At the hearing, it was recognized that Hanks had no criminal history, and Hanks gave a statement in allocution, accepting responsibility and expressing remorse, and asking for the court's "mercy."  *Id.* at 37.  In presenting argument, Sturgeon did not make a specific sentencing request, but highlighted that Hanks was forthcoming from the beginning, when the detective first came to the home to investigate, and had expressed genuine remorse.  For the State, the victim's mother spoke about the significant and lasting negative effects of Hanks's actions on her child.  The State argued for an enhanced sentence because the child was young and Hanks was in a position of trust, and the prosecutor noted that Hanks admitted to the investigating officer during the noncustodial interview that, thirty years ago, he had received counseling for sexual abuse of a child.  Judge Donahue accepted Hanks's guilty plea and sentenced him to a fixed term of fifty years imprisonment.  Hanks did not file a direct appeal of his guilty plea or his sentence.

[8]    While at the Indiana Department of Correction, Hanks learned from a fellow inmate ("other defendant") that Judge Donahue had made certain comments at the other defendant's September 30, 2002, sentencing hearing on an open plea to a sex offense.  At that hearing, Judge Donahue said that he takes "a pretty

hard stand" in "these kinds of cases," and he said that he did not "particularly care" for blind pleas and would "much rather the State and the defense . . . decide what is appropriate[.]" *Pet'r's Ex. D*. Judge Donahue advised the other defendant that, in other factually-similar cases, he had imposed maximum fifty-year sentences, and "I want you to know that that's the history I have." *Id*.

[9] On June 6, 2011, Hanks file a pro se petition for post-conviction relief, and on April 28, 2015, Hanks by counsel filed an amended petition.[4] In it, Hanks alleged that (1) his trial counsel rendered ineffective assistance for not informing Hanks about Judge Donahue's "sentencing practices and habits[,]" and (2) Hanks's plea was not knowing, intelligent, and voluntary because counsel failed to advise Hanks about "the practices and opinions of the sentencing court[,]" including that he did not like "blind pleas" and historically took a hard stand in sexual abuse cases. *Appellant's App. in Prior Appeal Vol. 2* at 47. On January 22, 2016, the post-conviction court held an evidentiary hearing on Hanks's amended petition for post-conviction relief and heard the testimony of (1) Sturgeon, (2) Jeffrey Stonebraker ("Stonebraker"), who was the chief public defender for Clark County in 2001, and (3) Hanks.

[10] Sturgeon represented Hanks from mid-February 2001 to September 2001. Sturgeon testified that he worked as a deputy prosecutor in Clark County from 1989 to 1994 and as a public defender from 1994 to 2013. Sturgeon testified to

---

[4] At that point, Judge Donahue was no longer the presiding judge of Clark Circuit Court.

practicing primarily criminal law, in six counties, and his experience included child molesting trials. Sturgeon stated that it was his standard practice to send his client a letter about the terms of any plea offer, but he did not take any position in the letter about whether his client should accept the offer. He explained:

> The purpose of the letter was usually to give them their options. Whether to go to trial or to accept the plea offer. To tell them what their risks were and to ask them to tell me exactly what their decision is. It's always the client's decision whether to go to a trial or not.

*Tr.* at 31. If the client wanted to accept the plea, then Sturgeon would meet with the client and take approximately fifteen minutes to "go through those plea agreements with the client[], paragraph by paragraph." *Id*. at 32. Ultimately, it was the client's decision whether to plead guilty, and, thus, he stated that it was Hanks's decision to plead "blind," or open, to the Class A felony, which left discretion to the trial judge and also left open the possibility for appeal. *Id*. at 29, 34.

[11] Sturgeon testified that, in general and during the time that he represented Hanks, he was not aware that Judge Donahue had a reputation for taking a "hard stance" when it came to sex abuse cases, was not aware that Judge Donahue was known to impose maximum sentences, and was not aware that Judge Donahue treated blind or open pleas unfavorably, and if someone had told Sturgeon that Judge Donahue ruled a particular way in a case, "I can't say that I really would have noted that as a habit[.]" *Id.* at 21-22. Sturgeon stated

that he was familiar with the prosecutor in Hanks's case, knew that she had tried several child molesting cases, knew that she had succeeded in other child molesting cases, and he concluded that if this particular prosecutor had shown a desire to go to trial, she meant it. *Id*. at 28. As memorialized in Sturgeon's letter to Hanks about the plea offer, Hanks had told Sturgeon that he did not intend to go to trial. *Id*. at 30. Due to the passage of time and no longer having Hanks's file, Sturgeon could not testify to any details or specifics of any conversations that he had had with Hanks about the plea offers. *Id*. at 23.

[12] Stonebraker testified that, as part of normal communication, public defenders would share outcomes of cases, and the like, but never "sat down and said let's talk about the habits of this judge." *Id*. at 41. He testified that he had appeared in front of Judge Donahue "probably hundreds" of times. *Id*. at 45. Stonebraker was asked, "Would it be fair to say that Judge Donahue did not have a reputation for giving the maximum sentence in every case?" and Stonebraker replied, "Yes." *Id*. He agreed that Judge Donahue evaluated each case on its merits and was "serious," but Stonebraker "didn't consider him to be a hanging judge, so to speak." *Id*.

[13] Hanks agreed that he "decline[d] to accept" the thirty-year offer and said that the reason he did so was "[t]o try to get an offer of less[] than thirty." *Id*. at 51. He stated that he received the letter from Sturgeon with the open plea and decided to accept the plea "[a]gain, trying to get a lesser sentence[.]" *Id*. Hanks stated that Sturgeon did not inform him about Judge Donahue's sentencing history or practices and did not give him any information, guidance, or

suggestions about the likelihood of receiving a sentence under thirty years. *Id*. at 52. Hanks said that if he had known that Judge Donahue had a reputation for taking a "hard stand" on sex abuse cases and giving maximum sentences, he would not have turned down the thirty-year offer. *Id*. at 53. Hanks confirmed that he never wanted to take the case to trial.

[14] On March 8, 2016, the post-conviction court denied Hanks's petition. Hanks appealed the post-conviction court's denial of his petition and claimed that (1) Sturgeon provided ineffective assistance of counsel by "failing to advise Hanks of Judge Donahue's sentencing practices in sex offender cases," and (2) his guilty plea was not knowing, intelligent, and voluntary due to "[Hanks's] ignorance of Judge Donahue's sentencing practices." *Hanks v. State*, 71 N.E.3d 1178, 1182 (Ind. Ct. App. 2017), *trans denied*. Hanks sought reduction of his fifty-year sentence to thirty years.

[15] On March 17, 2017, this court affirmed the post-conviction court's denial of relief on Hanks's claim of ineffective assistance of counsel, finding that it was not deficient performance for Sturgeon to not know and not advise Hanks about the local judge's sentencing practices. *Id*. at 1187. In its opinion, the *Hanks* observed the following with regard to Judge Donahue:

> At that time, [Judge Donahue] was judge of the Clark Circuit Court. Judge Donahue served in that capacity from 1987 to 2008. During that time, Judge Donahue, according to his own account, "took a hard stance in sentencing defendants in sexual offender sentencing proceedings." While Judge Donahue based his sentencing decisions on the evidence and argument presented

by the parties, "it was not uncommon for maximum sentences to be imposed" by him in sex offender cases. This "history of imposing maximum sentences in se[x] offender cases," Judge Donahue thought, "would likely" have been known to local criminal defendants and to the local defense bar. Moreover, Judge Donahue "did not particularly care for 'blind [i.e., open] pleas,' but preferred to have the State and the defense decide an appropriate sentence . . . and present that determination to the [c]ourt for its acceptance or rejection."

*Id.* at 1181-82 (internal citations to trial record omitted). As to Hanks's claim that his guilty plea was not voluntary the *Hanks* court found that the post-conviction court's order failed to discuss or decide the voluntariness issue, and because it was not resolved, the *Hanks* court remanded to the post-conviction court for findings of fact and conclusions of law on the issue of whether Hanks entered into his guilty plea voluntarily, knowingly, and intelligently. *Id*. at 1189.

[16] On remand, the post-conviction court entered findings of fact and conclusions of law on October 2, 2017 ("Order") addressing Hanks's claim that, if he had known the information about Judge Donahue having a reputation of imposing the maximum sentences in child molesting cases and not caring for blind pleas, he would not have accepted the open plea, and this lack of knowledge rendered his plea involuntary. In concluding that Hanks failed to carry his burden to establish that his plea was involuntary, the Order recognized that Judge Donahue (1) "advised Hanks of the nature of the charges against him, informed him of the constitutional rights he was waiving by pleading guilty and informed him that the maximum and minimum sentence for Child Molesting Class A

felony was from twenty (20) years to fifty (50) years[,]" and (2) asked Hanks, "But you understand that it is a blind plea and the minimum sentence, the bare minimum sentence you can get in this case is twenty years? Do you understand that?" and Hanks replied, "Yes sir." *Appellant's App. Vol. 2* at 17 (cite to transcript omitted). The Order also observed that Judge Donahue inquired, "Do you feel that your plea of guilty that you are now offering was made as you[r] free choice and decision?" to which Hanks responded, "Yes sir." *Id*. at 18.

[17] The post-conviction court determined that the record reflected that Hanks was aware that he could get fifty years but was hoping for a lesser sentence, and that his contention that he would not have pleaded guilty if he had known the information about Judge Donahue "seems both self-serving and dubious given the overwhelming nature of the evidence" against him. *Id.* at 77. The post-conviction court concluded that "it seems more speculation than fact that Petitioner would not have entered an open plea had he known the [] information before his plea." *Id.* Finding that Hanks had failed to prove that his plea was involuntary, the post-conviction court denied relief, and Hanks filed a motion to correct error, later amended, which the post-conviction court denied. Hanks now appeals.

## Discussion and Decision

[18] The sole issue is whether the post-conviction court properly concluded that Hanks's guilty plea was entered into knowingly, intelligently, and voluntarily.

In order to prevail on his petition for post-conviction relief, Hanks had to establish by a preponderance of the evidence that he was entitled to relief. *Barker v. State*, 812 N.E.2d 158, 162 (Ind. Ct. App. 2004), *trans. denied.* "'When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment.'" *Cornelious v. State*, 846 N.E.2d 354, 357 (Ind. Ct. App. 2006) (quoting *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004)), *trans. denied.* On appeal, we will not reverse unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, a post-conviction court's decision will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* Findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Black v. State*, 54 N.E.3d 414, 423 (Ind. Ct. App. 2016), *trans. denied.*

[19] When a defendant enters into a guilty plea, the record must indicate that the defendant knew of and understood his rights. *Barker*, 812 N.E.2d at 163. Specifically, before a guilty plea may be considered voluntary and intelligent, the record must disclose that the defendant knew he was waiving three particular constitutional rights: the right to trial by jury, the right to confrontation, and the right against self-incrimination. *Id.* Here, Hanks does not claim that he was not advised of the pertinent rights. Rather, his claim is that his acceptance of the open plea offer was involuntary because Sturgeon

"misled Hanks into believing that he could plead open and receive a sentence of less than thirty years," when, in fact, "the chance of receiving a sentence of less than thirty years was almost non-existent given the [trial] court's self-admitted history of imposing maximum sentences in sexual abuse cases and sentencing factors related to Hanks'[s] case[,]" such as that the child was of a young age and that Hanks violated a position of trust, both of which can be considered aggravating circumstances. *Appellant's Br.* at 12, 20. He maintains that he "was misled by defense counsel's failure to advise him of the likelihood of a sentence less than thirty years or the sentencing factors affecting this discretionary decision by the trial court." *Id*. at 23. He asks us to remand with instructions to reduce his sentence from fifty to thirty years.[5]

[20] Our Supreme Court has recognized that a guilty plea entered after the trial court has reviewed the various rights that a defendant is waiving and has made the inquiries called for by statute "is unlikely to be found wanting in a collateral attack." *Black*, 54 N.E.3d at 424 (citing *State v. Moore*, 678 N.E.2d 1258, 1265

---

[5] We note that, at times, Hanks's argument that his acceptance of the open plea was not voluntary morphs into an argument that his rejection of the earlier, fixed thirty-year offer was not voluntary. For instance, he argues that he "was not provided with the information necessary to make an informed decision as to accepting or rejecting the thirty year plea offer" and that "[t]he question is . . . whether Hanks'[s] decision to reject the fixed-term plea in hopes of receiving a sentence of less than thirty years was knowing, intelligent, and voluntary." *Appellant's Br.* at 13 and *Reply Br.* at 7; *see also Reply Br.* at 12 ("Had Hanks been adequately advised . . . he would have accepted the fixed-term plea of thirty years."). In our view, the relevant inquiry is not whether he voluntarily rejected the earlier fixed plea; that offer was rejected, expired, or withdrawn. Thereafter, Hanks accepted the open plea offer, and was sentenced on that guilty plea, and it is that plea and sentence that he is appealing. Therefore, the issue before us is whether his acceptance of the open plea was made knowingly, intelligently, and voluntarily.

(Ind. 1997), *cert. denied,* 523 U.S. 1079 (1998)). "However, defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief." *Moore*, 678 N.E.2d at 1266. In assessing the voluntariness of a plea, we review all of the evidence before the post-conviction court, including testimony given at the post-conviction hearing, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits that are a part of the record. *Cornelious*, 846 N.E.2d at 357-58.

[21] In this case, Hanks's claim is that Sturgeon did not give him "adequate guidance" in deciding whether to accept the open plea offer. *Appellant's Br.* at 24. Our courts have clarified that voluntariness claims are distinct from the ineffective assistance of counsel analysis under the Sixth Amendment. *Cornelious*, 846 N.E.2d at 358 (citing *Hill v. Lockhart,* 474 U.S. 52, 55-57 (1985)). "Voluntariness . . . 'focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice.'" *Id.* (quoting *Moore*, 678 N.E.2d at 1266). "'Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead[.]'" *Id.* at n.4 (quoting *Segura v. State,* 749 N.E.2d 496, 504-05 (Ind. 2001)); *see also Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003) (holding that it was immaterial whether the petitioner's claim was of an involuntary plea or ineffective assistance and that, under either standard, the petitioner must demonstrate that

the intimidation resulting from his trial counsel's failure to inform him of the single larceny rule was material to his decision to plead guilty), *trans. denied*. A petitioner may be entitled to relief if it can be shown that there is a credible factual and legal basis supporting the conclusion that the decision to plead was driven by erroneous advice. *Segura*, 749 N.E.2d at 507.

[22] Here, the post-conviction court found that Hanks's guilty plea was voluntarily given. We agree. It is undisputed that Hanks did not intend to take the case to trial. It is also undisputed that Sturgeon timely advised Hanks of the open plea offer[6] and outlined the possible maximum sentence that he would face if he went to trial and lost. Hanks claims that, when he accepted the open plea, he did not know that "the chance of receiving a sentence of less than thirty years was almost non-existent," given Judge Donahue's sentencing reputation, as well as other aggravating factors that existed. *Appellant's Br*. at 12. As to the likelihood of receiving less than thirty years, Sturgeon had told Hanks in prior communication, when discussing the thirty-year fixed plea offer, that the State was not willing to offer or recommend anything less than thirty years. *Pet'r's Ex. G*. Hanks asserts that Sturgeon should have told him that Judge Donahue did not care for open pleas and had a practice of imposing maximum sentences in sex offender cases; however, Sturgeon testified that he was not aware that this was Judge Donahue's reputation or practice. Stonebraker said that Judge

---

[6] We agree with our colleagues that "[t]he course of negotiations leading to this offer . . . do not appear clearly from the record." *Hanks*, 71 N.E.3d at 1181.

Donahue was known as "serious," but did not have a reputation of giving the maximum sentence in every case. *Tr.* at 45. It is undisputed that Judge Donahue expressly confirmed with Hanks at the sentencing hearing that he understood that he was entering into a "blind plea" and that Hanks understood that he could receive a minimum of twenty years and a maximum of fifty years. *Appellant's App. Vol. 2* at 17. The trial court also asked, "Do you feel that your plea of guilty that you are now offering was made as you[r] free choice and decision?" and Hanks replied, "Yes, sir." *Id.* at 18. In exchange for his guilty plea, four Class C felony charges were dismissed. While Hanks asserts that he would not have entered a guilty plea had he known the information about Judge Donahue, the post-conviction court found that contention to be "both self-serving and dubious[,]" *Appellant's App. Vol. 2* at 77, and the post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Black*, 54 N.E.3d at 423.

[23] "It is well established that '[a] mere hope for a certain outcome at sentencing, without more, does not suffice to set aside a guilty plea for lack of voluntariness.'" *Id.* at 420-21 (quoting *Moore*, 678 N.E.2d at 1267). Hanks hoped for less than thirty years, but he received the maximum of fifty years, which was permissible under the open plea, and likely wished he had accepted the thirty-year offer. However, based on the record before us, Hanks has not established that his plea was involuntary, and we cannot say that the evidence is undisputed and leads inevitably to an opposite conclusion of the post-conviction court.

Affirmed.

Baker, J., and Bradford, J., concur.